**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,**

**v.**

**PUBLIC UTILITY COMMISSION of Texas et al., Appellees.**

**No. 12656.**

Court of Civil Appeals of Texas, Austin.

Dec. 7, 1977.

Rehearing Denied Jan. 4, 1978.

Thomas M. Phillips, Robert A. Webb, Baker & Botts, Houston, Ford W. Hall, Jon Dee Lawrence, Darrell L. Barger, Dallas, for Southwestern Bell Tel. Co.

Robert J. Hearon, Jr., Graves, Dougherty, Hearon, Moody & Garwood, Austin, for appellant.

John L. Hill, Atty. Gen., Joyce B. Carpenter, Joe N. Pratt, Asst. Atty. Gen., Austin, for Public Utility Comm.

Otis H. King, City Atty., Harriet E. Hubacker, Asst. City Atty., Houston, for appellee/intervenor City of Houston.

Don R. Butler, Sneed, Vine, Wilkerson, Selman & Perry, Austin, for intervenor Texas Municipal League, and City of Austin.

SHANNON, Justice.

Southwestern Bell Telephone Company has appealed from the order of the district court of Travis County refusing to stay or suspend an order of the Public Utility Commission. The important issues concern (1) the character of judicial review accorded the administrative order under the Public Utility Regulatory Act, Tex.Rev.Civ.Stat. Ann. art. 1446c, and (2) the proper rate base to apply under the Act.

In September of 1976, the telephone company filed with the Commission its application and notice of intent to increase rates for the rendition of telephone services. After hearing and in December, 1976, the Commission entered its order fixing the rates to be charged by the telephone company. The rate allowed by the Commission represented a partial increase in rates, but not to the extent requested by the telephone company.

The telephone company then filed an appeal from the Commission's order in the district court of Travis County. In its first amended original petition, the telephone company alleged that the rate set by the Commission was inadequate to provide a fair return on the adjusted value of its invested capital devoted to serving its Texas customers, and that, as a matter of law, that rate was confiscatory. The telephone company requested the issue of confiscation be determined by a preponderance of the evidence as provided by " . . . Section 69 of the Public Utility Regulatory Act, and Section 19 of the Administrative Procedure and Texas Register Act."

The telephone company pleaded further that since under Texas law " . . . judicial review under the preponderance of the evidence standard can only be conducted in a trial *de novo,* Plaintiff [the telephone company] requests that this cause be tried as a full civil trial on the facts as well as the law." In January, 1977, the telephone company made application to the district court for a "Stay or Suspension of Order of the Public Utility Commission." The telephone company's position was that by reason of § 19(b)(3) of the Administrative Procedure and Texas Register Act, Tex.Rev. Civ.Stat.Ann. art. 6252–13a, the filing of its petition in district court, as a matter of law, vacated the Commission's order. This was so, pleaded the telephone company, because § 19(b)(3) provides the filing of a petition vacates an agency decision for which trial *de novo* is the manner of review authorized by law. The further position of the telephone company was that because the Commission's order was vacated, it was entitled to place its proposed rate into effect, such rate being under an appropriate bond.

The district court denied the telephone company's application. In its order the district court concluded that the manner of review authorized by the Public Utility Regulatory Act was other than by trial *de novo* and that judicial review was limited to the record made before the Commission " . . . with the issue of confiscation to be determined thereon by a preponderance of the evidence . . ." The district court was of the further opinion " . . . that under the applicable statutes, and, as a matter of law, the filing of the Plaintiff's Petition herein did not and does not vacate the Agency Decision . . ."

In its trial petition and in its first amended application for stay or suspension of order of the Commission, the telephone company pleaded, alternatively, the failure of the Commission to fix rates which will produce a fair return on the adjusted value of its invested capital was "an enjoinable violation of constitutional guarantees," and that the company was entitled to a temporary injunction upon the showing (1) that there was a reasonable probability that the company would succeed on final hearing; (2) that the loss to the company resulting from a refusal to grant the temporary injunction would be irreparable; and (3) that

the telephone customers could be adequately protected by bond.

In March, 1977, the district court heard the telephone company's first amended application for stay or suspension of the Commission's order. Consistent with its *de novo* theory of judicial review of the Commission's order, the telephone company tendered the testimony of three witnesses in an effort to show confiscation and its entitlement to a stay or suspension of the Commission's order. Equally consistent with its theory of judicial review of the Commission's order, the court refused to admit the testimony, but permitted the testimony to be taken by way of bill of exception. Considering only the record made before the Commission, the district court entered its order denying the telephone company's application for a "stay or suspension or temporary injunction" of the Commission's final order.

The refusal of the court to admit into evidence the testimony of the telephone company's witnesses is the procedural basis for the initial question on appeal. Whether or not the court erred in refusing to admit the testimony, of course, depends upon the character of judicial view accorded the Commission's order.

Section 69 of art. 1446c provides for judicial review of the Commission's orders. Section 69 provides as follows:

"Any party to a proceeding before the commission is entitled to judicial review under the substantial evidence rule. *The issue of confiscation shall be determined by a preponderance of the evidence.*" (Emphasis added).

Section 69 contemplates two types of judicial review. The type of review to be employed in a given case depends upon the nature of the order appealed from. The district court is to determine the issue of confiscation by a preponderance of the evidence. Review of other orders and issues is to be conducted under the substantial evidence rule.

The question is, then, what character of judicial review is intended by the provision in § 69 providing that the issue of confiscation is to be determined "by a preponderance of the evidence." The telephone company's position is that § 69 assures it a trial *de novo* on the issue of confiscation because the only review possible by a preponderance of the evidence is a *de novo* one. The company's further position is that because a *de novo* review is provided, the filing of its petition in district court nullified the Commission's order, and its proposed rates were placed in effect immediately pending the completion of judicial review.

The State's view, like that of the district court, is that judicial review is confined to the record made before the agency with the issue of confiscation to be determined thereon by a preponderance of the evidence. In support of its position, the State relies upon § 19 of the Administrative Procedure and Texas Register Act, Tex.Rev.Civ.Stat. Ann. art. 6252–13a (1976). This provision, argues the State, allows for only two forms of judicial review: (1) *pure de novo* review and (2) substantial evidence review limited to the record made before the agency. Any review that does not result in an automatic nullification of the agency order must, of necessity, be a substantial evidence review under § 19(d)(3). The argument then is that because there is no automatic nullification of the agency order in rate cases, the only possible review, even as to the issue of confiscation, is a substantial evidence review limited to the record made before the agency.

The State's argument largely ignores the force of § 4 of the Public Utility Regulatory Act. Section 4 provides that the Administrative Procedure and Texas Register Act applies to all proceedings under the Public Utility Regulatory Act when the two acts are consistent. Review of an administrative order "by a preponderance of the evidence" is entirely inconsistent with a substantial evidence review, because a review under a preponderance of the evidence is a feature of *de novo* review. *Southern Canal Co. v. State Board of Water Eng.*, 159 Tex. 227, 318 S.W.2d 619 (1958). Accordingly,

§ 19(d) of the Administrative Procedure and Texas Register Act does not apply to this appeal.

Prior to the enactment of the Public Utility Regulatory Act, rate cases always occupied a special category in the jurisprudence of this State. *Southern Canal Co. v. State Board of Water Eng., supra.* The courts of this state, historically, have required a trial *de novo* of rate orders claimed to be confiscatory. *Lone Star Gas Co. v. State,* 137 Tex. 279, 153 S.W.2d 681 (1941), see *Southern Canal Co. v. State Board of Water Eng., supra.* The *de novo* review accorded in those cases did not suspend or nullify the agency order. Instead, the court made its own independent findings of fact, but did not substitute its decision for the agency decision. *Lone Star Gas Co. v. State, supra; Railroad Commission v. Oil Field Haulers Association, Inc.,* 373 S.W.2d 394 (Tex.Civ. App.1963, no writ).

The provision for judicial review involved in *Lone Star Gas Co.,* Tex.Rev.Civ.Stat.Ann. art. 6059, is similar to the provision at bar. Article 6059 requires in an appeal to the district court of Travis County from an order of the Railroad Commission in a natural gas case, that the dissatisfied party must show " . . . by clear and satisfactory evidence . . ." that rate complained of was unreasonable. The term, "by clear and satisfactory evidence," is but another way of stating "by a preponderance of the evidence." See *Sanders v. Harder,* 148 Tex. 593, 227 S.W.2d 206 (Tex.1950); *Perry v. Long,* 222 S.W.2d 460 (Tex.Civ. App.1949, writ ref'd).

The term, "by a preponderance of the evidence," is not uncommon in our jurisprudence. "By a preponderance of the evidence" means by the greater weight and degree of credible evidence offered and submitted to the trier of fact. The district court concluded that the judicial review authorized by the Public Utility Regulatory Act " . . . is confined to the record

made before the Public Utility Commission with the issue of confiscation to be determined thereon by a preponderance of the evidence . . ." It occurs to us that a reviewing court cannot ascertain the truth by a preponderance of the evidence without addressing itself to the credibility of the witnesses, and that the district court cannot make a proper analysis of credibility by viewing that which the Commission thought was credible. It appears that the district court's view of a preponderance of the evidence review based upon the agency record renders the term "by a preponderance of the evidence" useless and unmeaning, a result we should not readily suppose the legislature intended. *Chambers v. State,* 25 Tex. 307 (1860).

A further reason that the issue of confiscation should be tried anew is that the issue of confiscation may arise only after the Commission has acted and confiscation can be determined only at such time as the Commission's findings and the rates based thereon are known.

Earlier in the opinion some of the cases dealing with judicial review of agency orders setting rates were noticed. Those cases involved judicial review provisions similar to § 69. In those cases the courts required a trial *de novo* review. In such cases the filing of the appeal in district court did not suspend or nullify the agency order. The legislature is presumed to have noticed pre-existing law when it enacted § 69 of the Public Utility Regulatory Act. See *Humble Pipe Line Co. v. State,* 2 S.W.2d 1018 (Tex.Civ.App.1928, writ ref'd); *Texas Air Control Board v. Travis County,* 502 S.W.2d 213 (Tex.Civ.App.1973, no writ). That presumption, in turn, supports our opinion that the legislature, by providing for a determination of the issue of confiscation by a preponderance of the evidence, intended to provide the character of *de novo* review accorded by pre-existing law in rate appeal.[1]

---

1. Section 85 provides for a stay or suspension of the Commission's order according to the usages of equity during the pendency of an appeal. The enactment of § 85 is some further

indication of a legislative intention to provide the character of *de novo* review accorded by pre-existing law in rate appeals.

The telephone company argues that the district court should have stayed the Commission's order and permitted its proposed rate increase pending a trial on the merits because the order was confiscatory. The argument of the company is grounded upon its belief that the Commission incorrectly calculated the rate base upon the basis of original cost less depreciation instead of the adjusted value of invested income. The district court concluded, by letter incorporated into its judgment, that the Commission did indeed calculate the rate base upon original cost less depreciation, but that such calculation was permitted by § 39 of the Public Utility Regulatory Act.

The sections in the Public Utility Regulatory Act that are concerned with the rate base are § 39, 40(a), and 41(a). Those sections are set out below:

"Sec. 39. In fixing the rates of a public utility the regulatory authority shall fix its overall revenues at a level which will permit such utility to recover its operating expenses together with a reasonable return on its invested capital.

"Sec. 40. (a) The regulatory authority shall not prescribe any rate which will yield more than a fair return upon the adjusted value of the invested capital used and useful in rendering service to the public.

"Sec. 41. (a) Adjusted Value of Invested Capital. Utility rates shall be based upon the adjusted value of property used by and useful to the public utility in providing service including where necessary to the financial integrity of the utility construction work in progress at cost as recorded on the books of the utility. The adjusted value of such property shall be a reasonable balance between original cost less depreciation and current cost less an adjustment for both present age and condition. The regulatory authority shall have the discretion to determine a reasonable balance that reflects not less than 60% nor more than 75% original cost, that is, the actual money cost, or the actual money value of any consideration paid other than money, of the property at the time it shall have been dedicated to public use, whether by the utility which is the present owner or by a predecessor, less depreciation, and not less than 25% nor more than 40% current cost less an adjustment for both present age and condition. The regulatory authority may consider inflation, deflation, quality of service being provided, the growth rate of the service area, and the need for the public utility to attract new capital in determining a reasonable balance."

The district court viewed §§ 39, 40(a), and 41(a) as establishing a dual system of valuation. The district court was of the opinion that § 39 outlined a minimum rate base that permitted a reasonable return on "invested capital" or the original cost, and that §§ 40(a) and 41(a) set the maximum rate base which allowed a return on the adjusted value of invested capital.

To the contrary, the telephone company's position is that the Public Utility Regulatory Act authorizes only one rate base, that being adjusted value of invested capital as set out in §§ 40(a) and 41(a). The telephone company argues for reasons to be discussed *infra,* that the legislature never "intended" any difference between the term "invested capital" in § 39 and the term "adjusted value of invested capital" in § 41. We do not agree with that argument.

A utility company's rates are set on the basis of earnings on its rate base. The required earnings are determined by multiplying the rate base by the percentage rate of return. Hopper, *A Legislative History of the Texas Public Utility Regulatory Act of 1975,* 28 Baylor L.Rev. 775, 799 (1976). The term "rate base" has been defined as that sum which represents the total quantum of invested capital or of property "values" on which the utility is entitled to a reasonable rate of compensation. Nichols and Fields, *Rate Base Under PURA: How Firm is the Foundation,* 28 Baylor L.Rev. 861, 862 (1976). There are three basic methods of valuation employed by different jurisdictions in this country. Rose, *Confusion in Valuation for Public Utility Rate-*

*Making,* 47 Minn.L.Rev. 1 (1963). The first is the original cost method; i. e., the cost of the property at the time it was first dedicated to the public use less an adjustment for depreciation. The second method is the current cost, or reproduction cost method, which estimates the value of the utility as the estimated cost of constructing an identical plan at prices for labor and materials prevailing at the time of valuation. The third method is the "fair value" method exemplified in *Smyth v. Ames,* 169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819 (1898).

In *Railroad Commission v. Houston Natural Gas Corp.,* 155 Tex. 502, 289 S.W.2d 559, 572 (Tex.1956), the Supreme Court, in construing two statutes that required a "fair value" rate base, rejected the three methods of valuation listed above and announced a new method: " . . . a reasonable balance between original cost less depreciation and replacement cost new less an adjustment for present age and condition." All parties seem to agree that the "reasonable balance" approach, announced by the Court in *Railroad Commission v. Houston Natural Gas Corp., supra,* was codified in § 41(a) of the Public Utility Regulatory Act. We do not agree, however, with the telephone company that the apparent codification is determinative of the rate base issue. In *Railroad Commission v. Houston Natural Gas Corp., supra,* the Supreme Court cautioned that the method of valuation was not decisive on the issue of confiscation. In addition, the legislature in § 41(a) has substantially modified the "reasonable balance" approach by restricting, mathematically, the balance the Commission can employ in setting an adjusted value of invested capital rate base.

In an effort to determine legislative intent, the parties to this appeal have examined, for the benefit of this Court, the various amendments to the House and Senate bills that ultimately evolved as §§ 39, 40(a), and 41(a) of the Public Utility Regulatory Act. Not unexpectedly, the parties draw opposite conclusions.

After a study of the committee reports and those amendments, Dr. Jack Hopper has written in this connection that:

" . . . the legislature did not completely accept fair value, nor did it completely accept original cost. It chose something in between, a hybrid.

\*     \*     \*     \*     \*     \*

"The Conference Committee was trying to avoid restricting the regulatory authority to a rigid rule when it determined the investment base. Although it is clear that the commission is given a good deal of flexibility in setting rate base it appears that two rules may be used to determine a utility's investment: Section 39, its actual or book or invested capital; and Section 41(a), its adjusted value of invested capital, which will be a balance of sixty to seventy-five percent original cost, and twenty-five to forty percent of current cost." 28 Baylor L.Rev. 777, 802 (1976).

It appears to us from our research that Hopper's analysis is probably correct. The enactment of § 39, 40(a), and 41(a) probably represents a compromise between those in the 64th Legislature who insisted upon a rate base consisting solely of original cost and those who espoused the "reasonable balance" rate base.

The telephone company argues that § 41(a) is the only section which deals with the problem of how a utility's property is to be valued. The telephone company explains § 39 as being merely a general introductory provision dealing with overall revenue policy. The telephone company then draws our attention to § 41(a) and suggests that § 41(a) fleshes out the skeletal reference in § 39 to rate base and operating expense.

In response to the telephone company's argument, we observe that the drafting of § 39 could have been more choice and precise. The fact remains that the term, "invested capital," was employed in § 39 while a different term, "adjusted value of invested capital," was used in § 40(a) and 41(a). Although there is not much authority, the term, "invested capital," means original cost. *Pichotta v. City of Skagway,* 78

F.Supp. 999 (D.C.Alaska 1948). In addition, the telephone company's argument, that the legislature never intended any difference between "invested capital" and "adjusted value of invested capital," cannot be reconciled with the proscription in § 40(a) against allowing a rate base greater than the adjusted value of invested capital. Surely, if only one rate base were contemplated by the Public Utility Regulatory Act, the caveat in § 40(a) would have been unnecessary. We are in agreement with the district court that the only construction that gives meaning to all of the provisions of §§ 39, 40(a), and 41(a) is one that allows for an application by the Commission of a dual rate base.

■ A third complaint of the telephone company concerns the exclusion from the rate base of land held by the company for future base. The district court concluded that the Commission's blanket exclusion of land from the rate base held for future use was erroneous. Nevertheless, the district court concluded that the value of the land held by the company for future use was infinitesimal and its exclusion from the rate base could not amount to confiscation.

We agree with the district court that the Commission's summary exclusion of all such land from consideration in the rate base was error. We cannot accept, however, the telephone company's argument urged upon us as basis for a stay order from this Court that some or all of the land should necessarily be included in the rate base. The acceptance of that argument would require this Court to make determinations, not made by the trial court, of the present usefulness of each parcel of the land to the telephone company. Those determinations may be made in district court on remand after a consideration of the evidence with respect to each parcel.

In its brief and by separate motion, the telephone company makes application to this Court, as an original matter, under the authority of § 85 of the Public Utility Regulatory Act, to stay or suspend the order of the Commission. We will deny that application.

Because § 39 of the Public Utility Regulatory Act permits a rate base of original cost less depreciation, the district court did not err in refusing to stay or suspend the order of the Commission on that ground. The district court did err in refusing to admit the testimony tendered by the telephone company relating to possible confiscation. The judgment is reversed for that reason, and the cause is remanded to the district court. Should the telephone company renew its application for a stay or suspension of the Commission's order upon the issue of confiscation, the review of the agency order on that issue will be conducted *de novo* in the manner accorded by pre-existing law in rate appeals.

Reversed and Remanded.