SOUTHWESTERN BELL TELEPHONE
COMPANY, Petitioner,

v.

PUBLIC UTILITY COMMISSION of
Texas et al., Respondents.

No. B–7308.

Supreme Court of Texas.

July 26, 1978.

Rehearing Denied Oct. 25, 1978.

504

Graves, Dougherty, Hearon, Moody & Garwood, Robert J. Hearon, Jr., Austin, Baker & Botts, Thomas M. Phillips, Houston, Wayne E. Babler, St. Louis, Mo., for petitioner.

John L. Hill, Atty. Gen., Joyce B. Carpenter and Joe N. Pratt, Asst. Attys. Gen., Austin, Don R. Butler, Austin, Otis H. King, City Atty., Harriet E. Hubacker, Asst. City Atty., Houston, Lee E. Holt, City Atty., Galan M. Sparks, Asst. City Atty., Dallas, for respondents.

DENTON, Justice.

This is a telephone rate case brought under the Public Utility Regulatory Act, Tex.Rev.Civ.Stat.Ann. art. 1446c.[1] Southwestern Bell filed an appeal from the Public Utility Commission's order and asked for a temporary injunction or stay order, pursuant to Section 85 of the Public Utility Regulatory Act conditioned upon giving a bond sufficient to protect its customers. The trial court denied the application and held that the manner of review authorized by PURA was other than by trial de novo and that judicial review was limited to the record made before the Commission. The court of civil appeals affirmed that part of the judgment of the trial court which held the Commission applied the proper rate base under PURA, but reversed that part of the trial court judgment concerning the character of judicial review accorded the Commission's administrative order. The court of civil appeals also declined to grant the temporary relief. 560 S.W.2d 157. We granted writs of error filed by both Southwestern Bell and the Utility Commission. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

Southwestern Bell has requested this Court to grant a temporary stay or injunction as it did in the courts below. The stay requested is grounded on the telephone company's claim of "confiscation." In this Court the alleged elements of confiscation are: (1) miscalculation of revenues and expenses; (2) erroneous use of "original cost" rate base; and (3) exclusion of land held for future use. A review of decisions involving rates of public utilities show that a temporary injunction will issue when three things are made to appear: (1) that there is a reasonable probability that the utility will succeed on final hearing; (2) that the loss to the utility resulted from a refusal to grant the temporary injunction or will be irreparable; and (3) that the customers can be adequately protected by

bond. It is also well settled that the sole question to be determined on appeal in the granting or refusing of a temporary injunction, is whether or not the trial court abused its discretion in rendering the order appealed from. *State of Texas v. Southwestern Bell Telephone Co.*, 526 S.W.2d 526 (Tex.1975); *City of Houston v. Southwestern Bell Tel. Co.*, 263 S.W.2d 169 (Tex.Civ. App.1953, writ ref'd). The record reflects that every finding of the trial court and the court of civil appeals necessary to support the judgment denying the temporary relief is supported by evidence of probative character. We, therefore, also deny the application to stay or suspend the order of the Public Utility Commission.

### Judicial Review

The resolution of judicial review involves the proper interpretation of section 69 of PURA and section 19 of the Administrative Procedure and Texas Register Act.[2] Section 69 of PURA provides judicial review of the Commission's orders as follows:

Any party to a proceeding before the Commission is entitled to judicial review under the substantial evidence rule. The issue of confiscation *shall be determined by a preponderance of the evidence.* [Emphasis added]

The trial court determined that its review was limited to the record before the agency "with the issue of confiscation to be determined thereon by a preponderance of the evidence." The court of civil appeals disagreed and held that the utility is entitled to a de novo review "in the manner accorded by pre-existing law in rate appeals."

The court of civil appeals relies heavily on section 4 of PURA which provides that the Administrative Procedure Act applies to the proceedings before the Commission "except to the extent inconsistent with this Act." The court, concluding that section 69 of PURA cannot be harmonized with the Administrative Procedure Act, reasons that the Legislature must have intended by sec-

---

**1.** Article 1446c referred to herein as PURA.

**2.** Tex.Rev.Civ.Stat.Ann. art. 6252–13a referred to herein as the Administrative Procedure Act or APA.

tion 69 to provide for judicial review of rate cases in the manner accorded prior to the Administrative Procedure Act.

Prior to the APA, there were at least four different methods of judicial review of administrative decisions. These four included (1) pure trial de novo, (2) substantial evidence trial de novo, (3) substantial evidence confined to the record, and (4) the rate case classification. The latter category was akin to the pure trial de novo review except that it was said that the agency's decision was admissible in evidence at trial. This had to be so because the issue in court was the "reasonableness" of the rates set by the administrative agency. This type has been referred to as a "de novo fact trial." *Lone Star Gas Co. v. State*, 137 Tex. 279, 153 S.W.2d 681, 695 (1941).

Sections 13 through 19 of the APA set forth the minimum procedural requirements of "contested cases" hearings before administrative agencies. Included are the right to notice, the right to present evidence and argument and to cross-examine witnesses, the making of a full record of the proceedings, the taking of depositions, the issuance of subpoenas to compel attendance of witnesses, the application of the rules of evidence, the preparation of proposals for decision and the filing of exceptions and briefs, and the inclusion of separately stated findings of fact and conclusions of law in final agency decisions. Section 3(2) of the APA defines a "contested case" to include rate-making proceedings. Therefore, the full panoply of procedural safeguards in the APA is now applicable in administrative rate-making hearings. The record of the proceedings before the Commission in this matter is voluminous.

Section 19 of the APA provides for judicial review of contested cases, including rate-making proceedings. The full text of section 19 reads as follows:

(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this Act. This section is cumulative of other means of redress provided by statute.

(b) Proceedings for review are instituted by filing of petition within 30 days after the decision complained of is final and appealable. Unless otherwise provided by statute:

(1) the petition is filed in a District Court of Travis County, Texas;

(2) a copy of the petition must be served on the agency and all parties of record in the proceedings before the agency; and

(3) the filing of the petition vacates an agency decision for which trial de novo is the manner of review authorized by law, but does not affect the enforcement of an agency decision for which another manner of review is authorized.

(c) If the manner of review authorized by law for the decision complained of is by trial de novo, the reviewing court shall try all issues of fact and law in the manner applicable to other civil suits in this state but may not admit in evidence the fact of prior agency action or the nature of that action (except to the limited extent necessary to show compliance with statutory provisions which vest jurisdiction in the court). Any party to a trial de novo review may have, on demand, a jury determination of all issues of fact on which such a determination could be had in other civil suits in this state.

(d) If the manner of review authorized by law for the decision complained of is other than by trial de novo:

(1) after service of the petition on the agency, and within the time permitted for filing an answer (or such additional time as may be allowed by the court), the agency shall transmit to the reviewing court the original or a certified copy of the entire record of the proceeding under review. By stipulation of all parties to the review proceedings, the record may be shortened. A party unreasonably refusing to stipulate to limit the record may be taxed by the court for the additional costs. The court may require or permit subsequent corrections or additions to the record;

(2) any party may apply to the court for leave to present additional evidence and the court, if it is satisfied that the additional evidence is material and that there were good reasons for the failure to present it in the proceeding before the agency, may order that the additional evidence be taken before the agency on conditions determined by the court. The agency may modify its findings and decision by reason of the additional evidence and shall file such evidence and any modifications, new findings, or decisions with the reviewing court;

(3) the review is conducted by the court sitting without a jury and is confined to the record, except that the court may receive evidence of procedural irregularities alleged to have occurred before the agency but which are not reflected in the record.

(e) The scope of judicial review of agency decisions is as provided by the law under which review is sought. Where the law authorizes appeal by trial de novo, the courts shall try the case in the manner applicable to other civil suits in this state and as though there had been no intervening agency action or decision. Where the law authorizes review under the substantial evidence rule, or where the law does not define the scope of judicial review, the court may not substitute its judgment for that of the agency as to the weight of the evidence on questions committed to agency discretion but may affirm the decision of the agency in whole or in part and shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) in violation of constitutional or statutory provisions;

(2) in excess of the statutory authority of the agency;

(3) made upon unlawful procedure;

(4) affected by other error of law;

(5) not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole; or

(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Administrative Procedure Act, art. 6252–13a, § 19. A complete reading of the section reveals that in contested cases there are now provided only two types of review—pure trial de novo or review confined to the agency record. We think the court of civil appeals fails to recognize the far-reaching changes intended by the adoption of the Administrative Procedure Act.

■ Southwestern Bell contends that section 19(e), APA should apply to rate cases since under pre-existing law, rate cases were accorded a form of trial de novo and, therefore, "the manner of review authorized by law" in such cases is by trial de novo. The Commission, however, was only recently created by enactment of the PURA in 1975. The manner of review of decisions of the Commission is as provided in that enabling Act. Had the Legislature truly intended a pure trial de novo of any of the Commission's decisions, it could easily have so provided in the act which created the Commission and set forth its powers and responsibilities. Additionally, the peculiar treatment of the rate case appeals evolved prior to the APA and like the other types of review in Texas, continued during a period of time when there were no uniform standards of procedure for administrative hearings. The standards and procedures set forth in the APA and the procedural rules of the various agencies promulgated thereunder have changed significantly the administrative hearing process. We will not lightly assume that by the simple inclusion of one sentence calling for the determination of the issue of confiscation by the preponderance of the evidence, the Legislature intended to prolong and extend the life of the special rate case category of review and render practically meaningless the volumes of testimony and exhibits developed before the Commission. Finally, however, we think the language of section 19 makes

it clear the Legislative intent was henceforth to provide only two types of review of administrative decisions in this State. We think the language of sections 19(b)(3) and (c) describe review of the pure trial de novo type and that sections (d) and (e) apply otherwise.

█ What has been offered in evidence by the utility in this case is primarily testimony concerning actual operating expenses and revenues which were not available at the time of the administrative hearing. In oral argument counsel for Southwestern Bell stated that it was not seriously contended that the court should ignore the voluminous record made at the administrative level, but, that, in all fairness, the utilities should be able to offer additional evidence in court. If a jury trial be demanded, who is to hear the new evidence and who is to examine the record?[3] How are the two processes to be coordinated? How can the two very different types of trial be performed in the same suit? We think they cannot. Moreover, much of the concern expressed by the utility is addressed in section 19(d)(2) of the APA where it is provided that on a showing of good cause the court may order additional evidence taken before the agency. Thus a fair opportunity is afforded all parties to include all material and relevant evidence in the record.

Southwestern Bell has further argued that this Court should permit some form of trial de novo in these cases as a check on the possible abuses of administrative bureaucracy. However, trial de novo is in reality no review at all. The courts act as though no administrative proceeding had transpired. It is only by examining what is done by the agency that the courts can detect and remedy abuses. Speaking of the remedial effects of the APA, this court wrote in *Imperial American Resources Fund, Inc. v. Railroad Commission of Texas,* 557 S.W.2d 280, 285 (Tex.1977) as follows:

The result is that the agencies and the courts now consider the same evidence. Judicial review under the essential standards of the substantial evidence rule has been preserved, but the courts now test the substantiality of the evidence upon which an administrative agency made its decision. This furnishes more assurance of administrative due process and a surer means of determining whether an agency acted arbitrarily, capriciously, and without due regard to the evidence.

The utility relies heavily upon this court's opinions in *Lone Star Gas Co. v. State,* 137 Tex. 279, 153 S.W.2d 681, 695 (1941), which announced the trial de novo rule in rate cases, and *Texas and New Orleans Railroad Co. v. Railroad Commission,* 155 Tex. 323, 286 S.W.2d 112 (1955), which reaffirmed *Lone Star Gas Co., supra.* A careful study of those opinions will reveal that they both involve interpretations of Railroad Commission statutes under which appeal was sought. The statutes involved in each case differ substantially from those before us here. For example, in *Lone Star Gas Co., supra,* Article 6059 was the applicable statute and read as follows:

If any gas utility or other party at interest be dissatisfied with the decision of any rate, classification, rule, charge, order, act or regulation adopted by the Commission, such dissatisfied utility or party may file a petition setting forth the particular cause of objections thereto in a court of competent jurisdiction in Travis County against the Commission as defendant. Said action shall have precedence over all other causes on the docket of a different nature and shall be tried and determined as other civil causes in said court. Either party to said action may have the right of appeal; and said appeal shall be at once returnable to the appellate court, and said action so appealed shall have precedence in said appellate court of all causes of a different character therein pending. If the court be in session at the time such right of action

---

3. Note that Sec. 19(c) of the APA expressly provides for the right to demand a jury determination of fact issues in the trial de novo.

accrues, the suit may be filed during such term and stand ready for trial after ten days notice. In all trials under this article the burden of proof shall rest upon the plaintiff, who must show by clear and satisfactory evidence that the rates, regulations, orders, classifications, acts or charges complained of are unreasonable and unjust to it or them.

■ Besides the fact the statutes involved in the prior cases are not present here, we think the Legislature has through adoption of the APA affected rate-making proceedings in a significant way. As stated, they are by definition "contested cases" and thus are now characterized by the full range of procedural safeguards in sections 13 through 19 of the Act. A "contested case" is by definition an "adjudicative" hearing.[4] We think it is clear that the Legislature intends for the Commission in setting rates to conduct an adjudicative type hearing and to initially determine the reasonableness of its rates. It is the duty of the courts, then, to review that determination and this can best be accomplished by examining the record of proceedings before the Commission. There is no constitutional infirmity in limiting judicial review to the record taken before the Commission. *Alabama Public Service Co. v. Southern Railway Co.,* 341 U.S. 341, 348, 71 S.Ct. 762, 95 L.Ed. 1002 (1951). In *Lone Star Gas Co., supra,* this court recognized the authority of the Legislature to substitute an adequate legal remedy for the equitable power of the court to review a rate order on the constitutional ground of confiscation. We hold that the Legislature has exercised that power in the adoption of the APA and the PURA.

■ Having concluded that section 69, PURA, does not afford a trial de novo, we come now to consider what type of review is provided. As stated, the APA applies unless inconsistent with the PURA. We see no inconsistency. The manner of re-

view being "other than by trial de novo" section 19(d) is applicable. The review is to be conducted by the court sitting without a jury and is confined to the record before the agency except as to evidence of procedural irregularities alleged to have occurred before the agency but which are not reflected in the record.

The remaining question is the effect of the second sentence of section 69 which provides that, "the issue of confiscation shall be determined by a preponderance of the evidence." At first blush, the intention would seem to be to require some part of this case to. be tried under the substantial evidence rule while some other part is to be tried by a preponderance of the evidence. In other words, the judge is to examine the record on a substantial evidence test on any issues other than "confiscation" and then examine the agency record on a "preponderance" test on that issue. Section 19(e), APA, addresses the "scope of judicial review." That section, however, describes only a trial de novo and a substantial evidence review. It does not address the possibility of a review limited to an agency record but on a preponderance of the evidence test.

The parties have cited no cases, and we have been unable to find any, which hold that the Legislature may properly prescribe a review of an agency record on a "preponderance" test. The court of civil appeals came to the conclusion that such is not possible "because a review under the preponderance of the evidence is a feature of de novo review." The court of civil appeals opinion further states:

> It occurs to us that a reviewing court cannot ascertain the truth by a preponderance of the evidence without addressing itself to the credibility of the witnesses, and that the district court cannot make a proper analysis of credibility by

4. Article 6252–13a, § 3(2) APA provides: " 'Contested case' means a proceeding, including but not restricted to rate-making and licensing, in which the legal rights, duties, or privileges of a party are to be determined by an agency after an opportunity for adjudicative hearing."

viewing that which the Commission thought was credible. 560 S.W.2d at 160.

■ We do not find it necessary to decide whether the Legislature might, under proper circumstances, specify a judicial review of an agency record on a preponderance test. "[I]t is within the legislative prerogative to specify the kind and nature of review to be employed by the courts so long as constitutional safeguards and requirements are not transgressed." *Gerst v. Nixon,* 411 S.W.2d 350, 356 (Tex.1966). We think those safeguards and requirements are transgressed, however, by the inclusion of the second sentence of section 69 PURA, calling for some part of the judicial review of an administrative decision to be determined by the preponderance of the evidence.

■ The preponderance of the evidence test is a fact-finding test and ordinarily a feature of a trial de novo. The substantial evidence test is one for the determination of a law question. The latter test is a feature of a trial to determine the reasonableness of an agency order or decision where only questions of law are to be determined and a retrial of the fact issues by a judge or jury is avoided. The courts cannot conduct both types of trial, or even a hybrid type of trial in the same suit. *Southern Canal Co. v. State Board of Water Engineers,* 159 Tex. 227, 318 S.W.2d 619, 623 (1958).

■ Furthermore, under section 69 the issue to be determined by the preponderance test is that of "confiscation." "The term 'confiscation' is a word capable of being used in many senses. It is impossible to give a general definition which can be applied in all instances. Usually the meaning of the word must be ascertained from the context." *Gulf Land Co. v. Atlantic Refining Co.,* 134 Tex. 59, 131 S.W.2d 73, 80 (1939). It is noted that section 69 is not limited to the appeal of rate cases, but is applicable to all appeals from the Commission of whatever nature. One can refer to cases dealing with the meaning of "confiscation" in a rate case, such as *Lone Star*

*Gas Co. v. State, supra,* and *General Telephone Company of the Southwest v. City of Wellington,* 156 Tex. 238, 294 S.W.2d 385 (1956). One can refer to cases involving the term "confiscation" in the context of the Railroad Commission's Rule 37 exemption, such as, *Gulf Land Co. v. Atlantic Refining Co., supra.* The term "confiscation" in the context of zoning ordinances is defined in *City of West University Place v. Ellis,* 134 Tex. 222, 134 S.W.2d 1038, 1041 (1940). What may constitute "confiscation" in any particular case appealed from the Commission to the courts is uncertain and is, we think a question of law. It is, of course, incongruous to speak of deciding as a fact from the preponderance of the evidence a question of law.

Moreover, even if it be conceded that the "issue of confiscation" can somehow be transformed into a factual inquiry, what are the relevant elements of that inquiry? There are in this case some forty-two findings of fact by the Commission. They include determinations of the amount of "invested capital," "the elements of a fair rate of return," "annual costs of operation," "annual revenue requirements," the sources of the revenue increases, etc. Is the district judge to substitute his judgment for that of the Commission on all forty-two findings?

It is noted that the second sentence of section 69 does not specify who is to determine the "issue of confiscation" nor what evidence is supposed to be examined to determine the "issue of confiscation." The first sentence simply provides for judicial review under the substantial evidence test. As stated, such review is conducted by a court to determine a question of law—the reasonableness of an agency decision. We have said that a law question cannot be determined by a preponderance of the evidence. Such would be no review at all, but a redetermination as though the agency had not acted. If this is a fact determination, can a jury be demanded? If so, is the jury to examine the agency record in the jury room? If this be not a fact issue, is the court of civil appeals to apply a preponderance of the evidence test in its review?

We think the above is illustrative of the difficulties to be encountered when elements of both a review under the substantial evidence rule and a retrial of fact issues are mixed in the same lawsuit. As we said in *Southern Canal Co., supra:*

> Courts are reluctant to strike down a legislative act because of conflicting or vague provisions. The general rule is that inconsistencies will be resolved, if possible, in order to give effect to the dominant legislative intent manifested by a statute. 39 Tex.Jur. 205–208, Statutes, §§ 110, 111. But when the provisions of a statute are so inharmonious and conflicting as to render it impossible of execution, the courts have no alternative but to declare it inoperative and void. *Hill County v. Sheppard,* 142 Tex. 358, 178 S.W.2d 261; *Hamrick v. Simpler,* 127 Tex. 428, 95 S.W.2d 357; *Walsh v. McConnell,* Tex.Com.App., 273 S.W. 833; *Dewrell v. Kearley,* 250 Ala. 18, 32 So.2d 812; 39 Tex.Jur. 43–44, Statutes, § 21; 50 Am.Jur. 484, Statutes, § 82 C.J.S. Statutes § 68d, p. 119.

318 S.W.2d at 624.

We are not unmindful of what is said in the *Southern Canal Co., supra,* opinion about the unique treatment of rate cases historically by our courts. That opinion acknowledges that a trial de novo was provided in those cases as previously discussed. We have cited *Southern Canal Co.,* however, because of its holding with regard to the fatal inconsistency inherent in any scheme to mix a trial de novo and a review under the substantial evidence rule in the same lawsuit. The conflict between the line of cases following *Lone Star Gas* and the *Southern Canal Co.* opinion is with regard to which of the two types of trial is appropriate. None of the cases permit both types of trial in the same suit.

In *Southern Canal Co., supra,* we declared inoperative and void a section of a statute which incorporated attributes of both a pure trial de novo and a trial under the substantial evidence rule. As stated here, such a situation renders the provisions so inharmonious and conflicting as to be im-

possible of execution. The two types of trial are diametrically opposed to each other. We have no choice but to declare the second sentence of section 69, PURA, inoperative and void.

■■■ We note that the PURA contains a severability clause, section 91. When the offensive language of section 69, PURA is stricken, there remains a workable system of judicial review of Commission decisions. Judicial review, pursuant to section 19(d) and (e) of the APA, is under the substantial evidence test and is limited to the record made before the agency.

### Utility Rate Base Valuation

In September 1976 the Telephone Company filed with the Public Utility Commission an application and notice of intent to increase its rates for telephone services. After an extended hearing the Commission entered its order fixing rates to be charged by the telephone utility. The rate permitted by the Commission provided for an increase of $57.8 million, somewhat less than that requested by the Telephone Company. The Telephone Company then appealed from this order to the District Court of Travis County seeking judicial review of the Commission's order. Simultaneously, Southwestern Bell sought an order temporarily staying the Commission's order pursuant to section 85, PURA, and requested a full evidentiary hearing before the trial court. The district court, after hearing, rendered its order denying the Telephone Company's application for "stay, suspension, or temporary injunction" of the Commission's final order. The court further ruled that its review was confined to the record made before the Commission and refused to admit the Telephone Company's additional proffered evidence.

The stated legislative policy and purpose of PURA was "to protect the public interest inherent in the rates and service of public utilities. . . . The purpose of this Act is to establish a comprehensive regulatory system which is adequate to the task of regulating public utilities as defined by this Act, to assure rates, operations, and services

which are just and reasonable to the consumer and to the utilities."[5]

Southwestern Bell contends that the Public Utility Commission used an incorrect rate base in determining the proper return to be allowed on its investment. Bell argues that the Commission erroneously used only original cost less depreciation as a rate base, rather than the "adjusted value of invested capital," defined in section 41 of the PURA as a reasonable balance between original cost less depreciation and current cost less an adjustment for present age and condition. The Commission contends that it properly used original cost less depreciation under the "dual rate base" interpretation which it gives to the PURA. The correct determination of a rate base is obviously of prime importance to Bell and its customers since Bell's return on its investment is the product of the rate base multiplied by a reasonable or fair rate of return. *See Railroad Commission v. Houston Natural Gas Corp.,* 155 Tex. 502, 289 S.W.2d 559 (1956) (the *Alvin* case); Hopper, *A Legislative History of the Texas Utility Regulatory Act of 1975,* 28 Baylor L.Rev. 777, 799 (1976); Webb, *Utility Rate Base Valuation in an Inflationary Economy,* 28 Baylor L.Rev. 823, 838 (1976).

It is undisputed by the parties and courts below that sections 39, 40, and 41 of the PURA govern the proper rate base and rate of return thereon. What is disputed is the correct interpretation to be placed upon these provisions. This is a question of first impression and is of great importance in setting utility rates in this case as well as in future cases. The applicable sections provide:

> Sec. 39. In fixing the rates of a public utility the regulatory authority shall fix its overall revenues at a level which will permit such utility to recover its operating expenses together with a reasonable return on its invested capital.

> Sec. 40. (a) The regulatory authority shall not prescribe any rate which will yield more than a fair return upon the adjusted value of the invested capital used and useful in rendering service to the public.

> \*　\*　\*　\*　\*　\*

> Sec. 41. The components of adjusted value of invested capital and net income shall be determined according to the following rules:

> (a) Adjusted Value of Invested Capital. Utility rates shall be based upon the adjusted value of property used by and useful to the public utility in providing service including where necessary to the financial integrity of the utility construction work in progress at cost as recorded on the books of the utility. The adjusted value of such property shall be a reasonable balance between original cost less depreciation and current cost less an adjustment for both present age and condition. The regulatory authority shall have the discretion to determine a reasonable balance that reflects not less than 60% nor more than 75% original cost, that is, the actual money cost, or the actual money value of any consideration paid other than money, of the property at the time it shall have been dedicated to public use, whether by the utility which is the present owner or by a predecessor, less depreciation, and not less than 25% nor more than 40% current cost less an adjustment for both present age and condition. The regulatory authority may consider inflation, deflation, quality of service being provided, the growth rate of the service area, and the need for the public utility to attract new capital in determining a reasonable balance.

The Commission and lower courts interpreted these provisions as establishing a dual rate base. The courts below held that section 39 set a *minimum* rate base permitting a reasonable return on "invested capital" or original cost less depreciation, and sections 40(a) and 41(a) set a *maximum* rate base permitting a fair return on the "adjusted value of invested capital." Southwestern Bell argues that only section 41(a) sets a

---

**5.** Tex.Rev.Civ.Stat.Ann. art. 1446c, § 2.

rate base, and that sections 39 and 40 merely speak in general terms as to the allowable rate of return.

In determining the monetary return to which Southwestern Bell is entitled, the Commission made findings using the two differing methods described in sections 39 and 40. Under section 39, the Commission interpreted "invested capital" as the equivalent of original cost less depreciation. The Commission found this figure to be $3,030,707,000. Applying a 9.5% rate of return to this rate base of "invested capital," the Commission fixed a return to Bell of $287,917,000. A similar monetary return was found by the Commission using the adjusted value of invested capital, found as $3,441,075,000, and applying an 8.37% rate of return. The Commission argues that either method is permitted by the "dual rate base" provisions of the PURA, since the first method takes inflation into consideration in the *rate of return* on invested capital while the second method compensates for inflation in the higher *rate base.* The Commission points out that the actual monetary return under either method is the same, and that the courts are concerned only with the end result—the rate. *See Railroad Commission v. Houston Natural Gas Corp., supra.* Southwestern Bell argues, on the other hand, that under section 41(a) only the adjusted value of invested capital can be considered as a rate base, and that since the Commission used invested capital as a rate base, it has failed to give Bell any return on the difference in value between the adjusted value of invested capital and invested capital or original cost. Bell also argues that taking the dollar return obtained by using an original cost rate base and dividing it into an adjusted value of invested capital rate base to obtain a rate of return on that second rate base is merely arithmetic sleight of hand by the Commission. Bell contends that figuring the dollar return and rate of return by such a "backing in" process plugged into original cost is not a permissible way to set the percentage rate of return and monetary return on the only proper rate base, the adjusted value of invested capital.

We agree with Southwestern Bell that only section 41(a) defines a rate base. In our view, and based upon our interpretation of the available legislative history, sections 39 and 40(a) prescribe in general terms a floor and a ceiling for the monetary *return* allowed to a utility on its investment. Section 39 speaks in terms of fixing *rates* of a public utility such that it may have revenues sufficient to recover its operating expenses and a reasonable return on its invested capital. Section 40(a) says that the Commission shall not set any *rate* which will yield more than a fair return on the adjusted value of its invested capital. Section 41(a), however, provides that "[u]tility *rates shall be based upon* the adjusted value of property used by and useful to the public utility in providing service . . . ." In determining rates, the Commission is required by section 41(a) to use the adjusted value of invested capital, as defined in that section, as the rate base. Sections 39 and 40 are general guidelines for the Commission to follow to check its determination of total return to the utility to make sure that it is within the lower and upper limits prescribed by those sections. In this manner, the utility is assured of an adequate return on its investment and the utility customers are protected from excessively high rates. If the total monetary return does not fall within the limits prescribed by sections 39 and 40, the Commission has the discretion provided in section 41(a) to adjust the balance in the rate base between original cost less depreciation and current cost less an adjustment for present age and condition. In determining adjusted value of invested capital as a rate base, section 41(a) permits the Commission to use from 60% to 75% original cost less depreciation, and not less than 25% nor more than 40% current cost less an adjustment for both present age and condition. The exact percentages of each element in the rate base can be set by the Commission within the limits of section 41(a) on a case by case basis.

We also agree with the interpretation given to the phrase "invested capital"

by the Commission and courts below. Section 39 provides that a utility shall recover at least a reasonable return on its "invested capital;" however, the term "invested capital" is never defined. Section 40(a) then provides that a utility shall not receive rates which would yield more than a fair return on the "adjusted value of invested capital." Section 41(a) also uses the phrase "adjusted value of invested capital" and then goes on to define it and provide that it is the correct rate base. In looking at the legislative history of section 39, conflicting conclusions can be drawn as to why "invested capital" was used rather than the "adjusted value of invested capital." The latter phrase was used in an earlier version of the bill, but was subsequently deleted. The only reasonable interpretation which can be placed upon the phrase "invested capital" is that it means original cost less depreciation, as the trial court and court of civil appeals held. Since the Legislature could just as easily have said "adjusted value of invested capital" in section 39, we must take "invested capital" to have a different meaning. We can conceive of no reasonable interpretation of "invested capital" other than original cost with an adjustment for depreciation. We therefore hold that "invested capital," as used in section 39 of the PURA, means original cost less depreciation.

Since we have held that the proper rate base is defined in section 41(a) as the adjusted value of invested capital, we must determine whether the Commission has erroneously computed the monetary return to Bell by using an incorrect rate base. It is undisputed that the Commission computed the return to Bell under its dual rate base theory, which we have held is an incorrect interpretation of the PURA. The Commission fixed a total monetary return to Bell by applying a 9.5% rate of return to the original cost less depreciation rate base, and by applying an 8.37% rate of return on the adjusted value of invested capital rate base. The Commission used a balance of 69.4% original cost and 30.6% current cost in computing the adjusted value of Bell's invested capital. It seems obvious that the Commission figured the total revenues or

monetary return to which Bell was entitled by one method or the other, and merely used that same figure to determine a rate of return on the other rate base. As stated above, we do not accept a dual rate base theory, but the Commission purported to determine the monetary return based upon what we have held to be the correct rate base, the adjusted value of invested capital. By using this method of fixing revenues for Bell in the alternative, the Commission has acted correctly. Since Bell does not dispute the Commission's finding as to the adjusted value of invested capital, the only element still in dispute is the rate of return.

The rate of return is not specified in the PURA as any exact percentage. Rather, sections 39 and 40(a) provide that it shall be at least a reasonable return on invested capital, but not more than a fair return on the adjusted value of invested capital. We take these provisions to mean that the Commission has discretion in setting a reasonable or fair return on the value of Bell's property used or useful in rendering service. In giving the Commission such discretion, we believe that the Legislature has acquiesced in the standard for rate of return set out in the *Alvin* case, *Railroad Commission v. Houston Natural Gas Corp., supra.* Discussing fixing the rate of return this Court said:

> In the absence of legislation the courts have resorted to reason for a guide and have fairly well established the rule that to avoid confiscation the rate of return must be high enough to attract ample capital but need not be beyond that. This percentage figure the trial court can determine as a fact.

*Alvin, supra* at 572. We are not to be understood as holding that the Legislature has codified the *Alvin* case, because the Commission rather than the trial court must set the rate of return. The PURA also establishes more specific standards in fixing a rate base than the general "fair value" language of *Alvin*. We do, however, regard the Commission as having the power to determine a percentage rate of return as

a fact. It has done so in this case, setting an 8.37% rate of return on the adjusted value of invested capital rate base. The total revenues or monetary return to Bell lies within the limits prescribed by sections 39 and 40, and we regard the revenues as a fair return on the adjusted value of Bell's invested capital. We therefore uphold the Commission's determinations as to the rate of return and revenues or monetary return to which Bell is entitled. Although we reject the notion of a dual rate base, we hold that the Commission's alternative method of setting the rate of return and rate base was correct under the PURA. The trial court and court of civil appeals correctly affirmed the Commission's determination on this issue.

■ The Commission excluded from the rate base all land held by the Company for future use. We agree with the courts below that the Commission erred in its blanket exclusion of this property from the rate base. However, we do not consider such action, under this record, confiscation. In the future, the Commission should consider the nature and present usefulness of the parcels of land and determine whether or not such property should be included in the rate base.

The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.

SAM D. JOHNSON and CHADICK, JJ., dissent.

SAM D. JOHNSON, Justice, dissenting.

This dissent is respectfully submitted.

This writer dissents from that part of the majority opinion which holds that the blanket exclusion of all land held for future use does not amount to confiscation under this record. While acknowledging that the exclusion is error in calculating the rate base of a utility, the majority apparently agrees with the district court's conclusion that the value of the land is so "infinitesimal" that it cannot amount to confiscation.

The record shows that the value of the land held for future use is approximately $1,136,000. This court held in *General Telephone Company v. City of Wellington,* 156 Tex. 238, 294 S.W.2d 385 (1956), that "confiscation" and "unreasonable inadequacy" of rates are identical for purposes of constitutional protection. This writer cannot agree that because $1,136,000 is only a small fraction of the Telephone Company's $3,000,000,000 rate base it is an "infinitesimal" amount or that its exclusion will result in an insignificant reduction of the rates to be collected by the Telephone Company.

This writer agrees with the court of civil appeals that no determination can be made as to whether any part of the land should be included in the rate base until a determination as to usefulness of each parcel of land is made. The trial court should be instructed to require the Commission to make these additional findings after considering the evidence in the Commission's record as to each parcel of land. Such action is authorized by Section 19(d)(1) of the Administrative Procedure Act which provides that "[t]he court may require or permit subsequent corrections or additions to the record."

CHADICK, Justice, dissenting.

I am compelled to dissent. The Public Utility Regulatory Act, Tex.Rev.Civ.Stat. Ann. art. 1446c, § 69, provides: "Any party to a proceeding before the commission is entitled to judicial review under the substantial evidence rule. The *issue of confiscation shall be determined by a preponderance of the evidence.*" (emphasis added) The majority has no warrant in precedent for holding that the Legislature violated the State Constitution by according the Telephone Company a jury trial, if requested, for determination of ultimate facts underlying the issue of confiscation. It may be that if any person or entity is to be deprived of their or its constitutional rights the Legislature and the Telephone Company would be a good place to start, but I am not agreeable to doing so. I think the Legislature can prescribe a jury trial on the confiscation issue and the Telephone Com-

pany can claim a right to a jury trial. I would affirm the Court of Civil Appeals.

## ON MOTION FOR REHEARING

SAM D. JOHNSON, Justice, dissenting.

This writer does not necessarily agree with the writing in dissent on motion for rehearing. This writer does agree, however, with the disposition for which the dissent argues.

CHADICK, Justice, dissenting.

I take this opportunity to elaborate my dissent previously filed.

The Texas Constitution, unlike the United States Constitution and that of many states, contains in Article V, Section 10, an express guarantee of a jury trial in every case in the district court. The guarantee is worded as follows:

"[I]n the trial of all causes in the District Courts, the plaintiff or defendant shall . . . have the right of trial by jury."

The majority has held that an appeal from an order of the Public Utility Commission fixing the compensation a utility is to receive for the use of its property by the public is controlled by Section 19(d)(3) of the Administrative Procedure Act, Article 6252–13a, which specifically provides:

"[T]he review is conducted by the court sitting without a jury and is confined to the record . . . ."

The constitutional guarantee that the Company shall "have the right of trial by jury" has been cut to shreds.

The majority's action can be correct if, and only if, the issue before the Court (the adequacy of the compensation for the public use of the utility's property) involved an administrative determination.

The scope of the Constitutional requirement for a jury trial has recently been exhaustedly examined by this Court in the case of *State v. Credit Bureau of Laredo, Inc.,* 530 S.W.2d 288 (Texas 1975). With regard to the guarantee of a jury trial the Court said:

"We also hold that Article V, Section 10, [the Judiciary Article], of the Constitution extends the right to a jury . . . .

"In *Cockrill v. Cox,* 65 Tex. 669 (1886), the court correctly wrote that the present Judiciary Article protecting the right to a jury was added by the Constitution of 1845 because the Bill of Rights Article contained in the Constitution of the Republic did not extend to causes in equity. Tex.Const. art. IV, § 16 (1845). In other words, the Judiciary Article was intended to broaden the right to a jury afforded by Article I, Section 15. *Tolle v. Tolle,* 101 Tex. 33, 104 S.W. 1049, 1050 (1907); *Hatten v. City of Houston,* 373 S.W.2d 525, 531–535 (Tex.Civ.App. 1963, writ ref'd n.r.e.); *Walsh v. Spencer,* 275 S.W.2d 220 (Tex.Civ.App. 1955, no writ). Subsequent constitutions extended the right to a jury to 'all cases of law or equity.' Tex.Const. art. V, § 16 (1868); Tex.Const. art. IV, § 20 (1866); Tex.Const. art. IV, § 16 (1861); Tex.Const., art. IV, § 16 (1845). It was the present Constitution of 1876 which changed the words of the earlier constitutions from 'all cases of law or equity' to its present form, 'trial of all causes.'

"The term 'cause' is defined in Black, Law Dictionary (4th ed. 1951), as 'a suit, litigation, or action. Any question, civil or criminal, litigated or contested before a court of justice.' The United States Supreme Court in *Ex parte Milligan,* 71 [4 Wall.] U.S. 2, 112, 18 L.Ed. 281 (1866), stated that in any legal sense, 'action,' 'suit' and 'cause' are convertible terms. The court then defined the terms to mean any legal process which a party institutes to obtain his demand or by which he seeks his right. This broad meaning of the word, 'cause,' comports with the interpretation given by other courts and legal writers in the period when our present Constitution was drafted." (530 S.W.2d 292).

With regard to possible exceptions to the entitlement to a jury the court explained:

"Special circumstances justify our former holdings that not all adversary proceedings qualify as a 'cause' under the Judiciary Article. . . . They include such proceedings as . . . appeals in administrative proceedings, *State v. De Silva,* 105 Tex. 95, 145 S.W. 330 (1912);

*Texas Liquor Control Board v. Jones,* 112 S.W.2d 227 (Tex.Civ.App. 1937, no writ), and others. In each of the above instances, there is some special reason that a jury has been held unsuitable, . . ."

By examining the two cases cited by the Court with regard to administrative proceedings, it is found that the special reason supporting such exception is that the administrative proceeding did not involve a property right. This is demonstrated by the opinion in the first case cited, *State v. De Silva,* 105 Tex. 95, 145 S.W. 330 (1912), where the opinion was as follows:

"The answer to the second question depends upon the character of the act of removal. Was it judicial? The fact that the person who declared the license forfeited was a county judge does not make the act judicial in character. That depends upon the matter in controversy, and the remedy applied. It would be a useless consumption of time to adduce authorities or arguments to the effect that a license to sell intoxicants is not a property right, but is a privilege granted by the state, which may be revoked. The state had the power to prescribe the manner of enforcing the law by revoking a license granted, which action was not judicial, but administrative or ministerial." (145 S.W. 333).

The second case cited for the administrative proceeding exception, *Texas Liquor Control Board v. Jones,* 112 S.W.2d 227 (Tex.Civ.App. 1937, no writ), is similar in character. There the Court quoted with approval the following pronouncement of the law:

"The cancellation of a permit to sell liquor under the Liquor Control Act and the principle of law governing such matters is not a civil suit or cause of action; but the power and authority to cancel such a permit is merely the exercise of an administrative function and duty imposed by the act upon the board or its administrator. A permittee or licensee under the act has no vested right to sell liquor, but is a mere permittee or licensee with the privilege of selling liquor in accordance with the terms of the act, and accepts his permit or license subject to the authority of the board to cancel it for any violation of the statutes or any rule or regulation promulgated by the board under authority of the act." (112 S.W.2d 229).

The Court made it clear that the administrative proceeding exception will not apply where a property right is involved. Could it possibly be argued a property right is not involved when the issue is the adequacy of compensation for public use of property? The question answers itself. Not only is a property right involved but one specifically protected by the Texas Constitution. Article I, Section 17, of our Texas Constitution provides:

"[N]o person's property shall be . . . applied to public use without adequate compensation".

This Court in its prior decisions has made it abundantly clear that the fixing of rates would not come under an administrative proceeding exception but is a matter involving a full judicial determination.

In *Lone Star Gas Company v. State,* 137 Tex. 279, 153 S.W.2d 681, 696 (1941), the Court held:

". . . When the Commission acts to prescribe rates to be charged by common carriers and public utilities, it fixes the price or rate that such concerns must subject their property to the use of the public for. It therefore operates legislatively, *not administratively,* and the courts, in such matters, under the statutes mentioned will determine for themselves, in the manner and way prescribed by law, whether the properties of such concerns have been confiscated for the benefit of the public, or whether the properties of such concerns have been appropriated to, or required to serve, the public for an unreasonable and unjust return." (153 S.W.2d 696).

Also in *General Telephone Company v. City of Wellington,* 156 Tex. 238, 294 S.W.2d 385 (1956), the Court held:

"By our recent and unqualified refusal of the writ of error in *City of Houston v. Southwestern Bell Tel. Co.,* Tex.Civ.App., 263 S.W.2d 169 we undoubtedly held that, with or without any review statutes such as those involved in the gas and railroad

rate decisions mentioned, the failure of telephone rates to produce a fair return on the fair value of the properties of the exchange in question was an enjoinable violation of constitutional guarantees, although there was no 'confiscation' in the sense of an out-of-pocket loss.

"Whether the City of Houston opinion be taken to refer only to the federal constitution or to both it and our state constitution, the result for most practical purposes is the same, and we see no good reason to distinguish between the two as to this largely academic concept of 'confiscation' being distinct from 'mere unreasonableness' in the matter of the return from public utility rates. Once we admit that the return of a given rate is so low that no reasonable or just man would require it and that he who suffers from it suffers beyond the limits of reason and justice, are we not overly metaphysical if we add that there is no constitutional question involved, or no right to judicial review without a statute, unless the rate actually produces red figures on a financial statement? Economic values exist largely in relation to other economic values. If the going rate for labor be $2 per hour and a given laborer be prohibited by law from charging over 20¢ per hour, is he any less a slave because he manages to subsist on his 20¢?" (294 S.W.2d 389).

In *Railroad Commission v. Houston Natural Gas Corp.,* 155 Tex. 502, 289 S.W.2d 559 (1956), the Court held:

"[W]e have concluded that there are two genuine issues of material fact in the case at bar. They are:

(1) What is the fair value of the company's property used and useful in serving the City of Alvin?

(2) What is the lowest composite percentage rate of return which will induce the investment of adequate capital?

"The trial court should make its own findings of fact based upon admissible evidence and test the new rate against its findings." (289 S.W.2d 575).

Returning to the Judiciary Article of the Constitution (Article V, Section 10), the foregoing decisions clearly demonstrate that an appeal from a Commission Order fixing rates is a case or cause in the District Court where the "right of trial by jury" is mandatory. The case is not an appeal from an administrative decision.

If the majority opinion is permitted to stand, where will it all end? Will the Texas constitutional guaranty of jury trial be completely read out of the Constitution? Perhaps the Legislature will next pass a law allowing the Highway Commission to fix compensation to be paid when private property is taken for highway purposes with the landowner limited to a substantial evidence appeal without a jury under the Administrative Procedure Act. When this happens the farmer who lost his land for the amount of the Highway Commission appraisal will be as dismayed as I that this fundamental right to jury trial has vanished, taken from him by the sophistic and deceptively vague reasoning in a short series of court opinions.

I do not necessarily agree with what the Court of Civil Appeals has written, I do think its disposition of the appeal was correct.