# Supreme Court of Texas

No. 23-0149

The GEO Group, Inc. and GEO Corrections and Detention, LLC,

*Petitioners*,

v.

Glenn Hegar, Comptroller of Public Accounts of the State of
Texas, and Ken Paxton, Attorney General of the State of Texas,

*Respondents*

On Petition for Review from the
Court of Appeals for the Seventh District of Texas

**Argued October 30, 2024**

JUSTICE BUSBY delivered the opinion of the Court.

Justice Lehrmann did not participate in the decision.

This tax refund case concerns whether a private, for-profit corporation qualifies as an "agent" or "instrumentality" of the federal or state government and is thus exempt from certain state taxes. *See* TEX. TAX CODE § 151.309; 34 TEX. ADMIN. CODE § 3.322. The Comptroller assessed a deficiency in sales and use taxes against The GEO Group, Inc., a Florida corporation that contracts with federal and state

government entities to detain their inmates in GEO Group's correctional facilities. GEO Group challenged the deficiency in an administrative hearing, and the Comptroller denied the claim. GEO Group paid all additional taxes due and sued for a refund in district court, arguing the purchases at issue were tax-exempt because they were made on behalf of GEO Group's government clients.

The trial court ruled GEO Group was not entitled to its requested exemption because it failed to prove by clear and convincing evidence that it was an "agent" or "instrumentality" of the government. The court of appeals affirmed, holding GEO Group's relationship with its government clients was too attenuated to warrant a tax exemption. Although we conclude that a preponderance of the evidence standard applies, we agree that GEO Group is not entitled to a tax refund because it is neither a government "agent" nor "instrumentality" under the statute and rules. We therefore affirm.

## BACKGROUND

GEO Group is a corporation organized under the laws of Florida[1] that owns and operates correctional facilities throughout the United States for the detention of federal and state inmates. Some of these facilities are managed and operated through GEO Group's wholly owned subsidiary, GEO Corrections and Detention, LLC (GEO LLC). GEO Group and GEO LLC (collectively GEO) contracted with various government clients to operate detention facilities in Texas between January 1, 2011, and December 31, 2014. In some instances, GEO

[1] GEO Group is also registered with the Texas Secretary of State.

2

entered into service agreements directly with federal or state agencies to house detainees at the facilities. In other instances, federal agencies contracted with Texas counties to house federal detainees, and the counties in turn subcontracted this function to GEO.

While operating its facilities in Texas, GEO purchased various supplies it deemed necessary to operate the facilities, such as electricity, natural gas, food, and furniture. GEO did not pay tax on these purchases. Following a compliance audit, the Comptroller assessed a deficiency against GEO. GEO challenged the deficiency ruling, arguing the purchases at issue were tax-exempt. An administrative hearing was held on the deficiency, and the Comptroller rejected GEO's challenge. When GEO's motion for rehearing was denied, GEO paid all additional tax due in the stipulated amount of $3,937,103.71 and filed suit in district court seeking a taxpayer refund under Chapters 112 and 151 of the Tax Code.

The trial court conducted a bench trial and rendered judgment denying GEO's refund claim. In its findings of fact and conclusions of law, the trial court concluded that GEO was neither an agent nor an instrumentality of the United States or Texas and that GEO failed to meet its burden to show exemption entitlement by "clear and convincing evidence." GEO appealed.

The court of appeals affirmed the trial court's judgment. 661 S.W.3d 470, 471 (Tex. App.—Amarillo 2023). "Although GEO houses federal detainees, a function closely identified with the government, and must comply with specific government regulations while carrying out its responsibilities," the court of appeals held that "GEO is a distinct entity

3

engaged in commercial, for-profit activities" and thus "has not established that it is an agency or instrumentality of the federal or state government immune from the payment of state tax." *Id.* at 475-76. The court of appeals also rejected GEO's argument that the trial court erroneously applied a heightened standard of proof, reasoning "GEO has cited no cases holding that a trial court is precluded from applying the [clear and convincing] standard established in Rule 3.322." *Id.* at 477. This petition followed.

## ANALYSIS

### I.    GEO must prove its entitlement to an exemption by a preponderance of the evidence.

We begin by addressing our standard of review. "We review the trial court's conclusions of law de novo and its findings of fact for sufficiency of the evidence." *Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 40 (Tex. 2020) (citations omitted).

In its first issue, GEO contends the trial court and court of appeals erred in concluding that it was required to meet a heightened standard of proof.[2] Specifically, the court of appeals reviewed whether

---

[2] Courts sometimes use the "slipper[y]" term "burden of proof" to describe not only which party "must persuade the [factfinder] in its favor to prevail," but also "how difficult it will be for the party bearing the burden of persuasion to convince the [factfinder] of the facts in its favor"—that is, "the degree of certainty by which the factfinder must be persuaded of a factual conclusion to find in [its] favor." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 n.4 (2011). Like the Supreme Court of the United States, we have referred to this latter concept as the "standard of proof," and we use that term here for clarity. *See, e.g., id.*; *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008); *Great Am. Ins. Co. v. Langdeau*, 379 S.W.2d 62, 70-71 (Tex. 1964). "Various standards of proof are familiar—beyond a

4

GEO proved its entitlement to an exemption by clear and convincing evidence. 661 S.W.3d at 477.[3] The court pointed to a Comptroller rule that sets out the "guiding principles" the agency uses to "administer[]" the exempt status of entities, which include that "[a]n organization must show by clear and convincing evidence that it meets the requirements of this section and the relevant statutes." *Id.* (citing 34 TEX. ADMIN. CODE § 3.322(a)(2)).

GEO argues that the Tax Code controls instead, providing that in suits for a tax refund in district court, "the issues shall be tried de novo as are other civil cases." TEX. TAX CODE § 112.154. As we have long recognized, "[t]he preponderance of the evidence test is . . . a feature of a trial de novo." *Sw. Bell Tel. Co. v. Pub. Util. Comm'n*, 571 S.W.2d 503, 511 (Tex. 1978). We therefore agree with GEO that it was required to prove its entitlement to an exemption in court by a preponderance of the evidence.

An examination of the relevant statutory and regulatory framework supports this conclusion. In Texas, an administrative determination may be challenged in a court of law if the claimant "has exhausted all administrative remedies available within [the relevant] state agency." TEX. GOV'T CODE § 2001.171. Judicial review of an agency determination is governed by the Texas Administrative Procedure Act, which applies the scope of judicial review "provided by

reasonable doubt, by clear and convincing evidence, and by a preponderance of the evidence." *Microsoft Corp.*, 564 U.S. at 100 n.4.

[3] As we have explained, an elevated standard of proof at trial requires an elevated standard of appellate review. *See Columbia Med. Ctr. of Las Colinas*, 271 S.W.3d at 248-49.

5

the law under which review is sought." *Id.* § 2001.172. "[I]f the law does not define the scope of judicial review," the reviewing court must apply a "substantial evidence" standard of review, which affords significant deference to the agency's prior determination. *Id.* § 2001.174; *City of Dallas v. Stewart*, 361 S.W.3d 562, 566 (Tex. 2012). By contrast, if the manner of review specified is trial de novo, no deference is afforded the agency's determination. Instead, "the reviewing court shall try each issue of fact and law in the manner that applies to other civil suits in this state as though there had not been an intervening agency action or decision." TEX. GOV'T CODE § 2001.173.

When a taxpayer sues the Comptroller for a tax refund in district court, the Tax Code provides that "the issues shall be tried de novo as are other civil cases." TEX. TAX CODE § 112.154. Although most civil disputes "apply the preponderance-of-the-evidence" standard of proof, some civil claims "elevate the evidentiary standard to require proof by clear-and-convincing evidence." *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015).

This Court has long identified the preponderance standard as an attribute of a trial de novo. *Key W. Ins. Co. v. State Bd. of Ins.*, 350 S.W.2d 839, 846 (Tex. 1961) ("Review by trial de novo has all the attributes of an original action in the reviewing court. The trial court must weigh the evidence by a 'preponderance of the evidence' standard."); *see also Sw. Bell Tel. Co.*, 571 S.W.2d at 511. We have been reluctant to depart from the preponderance standard in civil cases, doing so "[o]nly in extraordinary circumstances, such as when we have

6

been mandated to impose a more onerous burden." *Ellis County State Bank v. Keever*, 888 S.W.2d 790, 792 (Tex. 1994).[4]

The Comptroller contends several principles from our cases support a heightened standard of proof: "[s]tatutory exemptions from taxation are subject to strict construction"; "the burden of proof of clearly showing that the organization falls within the statutory exemption is on the claimant";[5] and "an exemption cannot be raised by implication, but must affirmatively appear, and all doubts are resolved in favor of taxing authority and against the claimant."[6] But these principles are rules of construction used to understand the legal meaning of statutory or regulatory language and resolve any close calls resulting from their application. Rules of construction help courts answer questions of law; they do not alter the standard for proving facts. This Court has acknowledged as much, clarifying that although in some cases "reference has been made to the importance of positive, clear and satisfactory proof, all issues of fact are resolved from a preponderance of the evidence." *Id.* at 793 (footnote and internal quotation marks omitted). Indeed, "a requirement of 'clear and satisfactory proof' represents only an admonition to exercise great caution in weighing the

---

[4] Similarly, the Supreme Court of the United States has only "mandated an intermediate standard of proof—'clear and convincing evidence'—when the individual interests at stake are both 'particularly important' and 'more substantial than a mere loss of money.'" *Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (quoting *Addington v. Texas*, 441 U.S. 418, 424 (1979)).

[5] *N. Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991).

[6] *Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 272 (Tex. 1979).

7

evidence and does not supplant the usual standard of proof by a preponderance of the evidence." *Id.* (citing *Rhodes v. Cahill*, 802 S.W.2d 643, 645 n.2 (Tex. 1990)).

The Comptroller's rule also supports our conclusion. Although the rule provides that "[a]n organization must show by clear and convincing evidence" that it satisfies exemption requirements, with "[a]ny unresolved question about the qualifications of an organization [to] result in denial of exempt status," 34 TEX. ADMIN. CODE § 3.322(a)(2), it specifies that the "section is *administered*" using that standard, *id.* § 3.322(a) (emphasis added). This language suggests that the rule applies only to the administrative process, not to a court's trial de novo. That is also the reading that best comports with the scope of the Comptroller's authority as part of the executive branch, which does not extend to dictating the standard of proof to be applied in court.

The very first section of the Comptroller's rules also supports this reading by limiting the matters subject to the rules to "contested case proceedings that may be referred to the jurisdiction of [the State Office of Administrative Hearings]." *Id.* § 1.1(a).[7] A taxpayer suit brought after all administrative remedies have been exhausted *cannot* be referred to the State Office of Administrative Hearings; "[t]he district courts of Travis County have exclusive, original jurisdiction of a taxpayer suit." TEX. TAX CODE § 112.001. And a party need not challenge the application of the clear and convincing standard in the

_____

[7] "Contested case—A proceeding in which the legal rights, duties, or privileges of a party are to be determined *by the agency* after an opportunity for an adjudicative hearing." 34 TEX. ADMIN. CODE § 1.2(8) (emphasis added).

8

administrative hearing to get this result—the taxpayer is entitled to trial de novo on the issues once it brings suit in the district court. In that de novo trial, the taxpayer must prove its entitlement to the exemption by the familiar preponderance of the evidence standard of proof. We recognize the oddity created by the Comptroller's choice to apply an administrative standard of proof higher than the one a court will apply if the organization requesting an exemption seeks a trial de novo, but that choice is unchallenged here.

## II.     GEO is not an instrumentality of the United States or Texas.

With the applicable standard of proof and standard of review thus clarified, we turn to GEO's second issue: that it is entitled to an exemption as an unincorporated instrumentality of the federal and state governments. The parties' arguments on this issue principally concern the proper constructions of statutes and administrative rules, which are questions of law we consider de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We look first and foremost to the plain and common meaning of the statute's or rule's words in context and to any definitions the statute provides. *Am. Multi-Cinema*, 605 S.W.3d at 40. "When the words read in context are clear, they determine intent; a court must never rewrite them under the guise of interpretation." *Id.* at 41.

Taxable items sold or used in Texas—which include tangible personal property and certain services—are generally subject to sales and use taxes unless an exception applies. *See* TEX. CONST. art. VIII, §§ 1-2; TEX. TAX CODE § 151.051(a). These taxes are remitted to the

9

Comptroller, who has discretion to "adopt rules that do not conflict with the [Constitution or] laws of this state or the United States" for the enforcement of the Tax Code and the collection of taxes. TEX. TAX CODE §§ 111.001, .002(a). Thus, when the Tax Code's directives are not decisive, the Comptroller's rules may provide further guidance so long as they are reasonable and consistent with state and federal law. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011).

The Tax Code provides a sales and use tax exemption for "governmental entities," which are defined in pertinent part as "(1) the United States; (2) an unincorporated instrumentality of the United States; (3) a corporation that is an agency or instrumentality of the United States and is wholly owned [directly or indirectly] by the United States . . . ; [or] (4) this state." TEX. TAX CODE § 151.309(1)-(4). The Comptroller's rule (which we address more fully below) seemingly expands this exemption to "unincorporated agencies and instrumentalities" of the State of Texas as well as the United States. 34 TEX. ADMIN. CODE § 3.322(c)(1), (4).[8] We need not decide whether this expansion is permissible, however, as GEO does not qualify for the exemption even under the Comptroller's broader rule.

---

[8] The portion of the Comptroller's rule that applies the exemption to "[t]he State of Texas, its unincorporated agencies and instrumentalities" is identical to an earlier version of the statute. *See* Act of May 29, 1981, 67th Leg., R.S., ch. 710, 1981 TEX. GEN. LAWS 2652, 2652 (codified as amended at TEX. TAX CODE § 151.309). The quoted language was changed to "this state" when it was incorporated into the Tax Code.

10

GEO contends the purchases it made pursuant to its contracts with the federal government, state government, and various counties[9] are exempt from taxation because it qualifies as an "unincorporated instrumentality" of the United States and this State. *Id.* We disagree.

As an initial matter, GEO does not explain how a private, for-profit corporation or limited liability company can be characterized as "unincorporated." The statute and rule refer to "a corporation" or "incorporated instrumentality" wholly owned by the government and separately to an "unincorporated instrumentality" of the government, which indicates that a corporation does not fall within the latter category.[10] Later provisions of the rule similarly distinguish between a "corporation" and an "unincorporated entity" when it comes to submission of governing documents.[11] Given these textual clues,

---

[9] In some cases, the federal government contracted with Texas counties, which in turn subcontracted with GEO to operate federal detention centers. Because tax exemptions are not available for instrumentalities of the county—instead, only the county itself may qualify, *see* 34 TEX. ADMIN. CODE § 3.322(c)(5)—GEO claims an exemption for purchases and uses at its county-contracted facilities as a subcontractor of the federal government. We express no view regarding whether such an exemption is available.

[10] TEX. TAX CODE § 151.309(2), (3); 34 TEX. ADMIN. CODE § 3.322(c)(1), (2), (4). This is consistent with ordinary principles of English language construction, which would exclude "incorporated" entities from "unincorporated" classification.

[11] A "corporation" must submit "its formation documents and certificate of existence from [its] home state of incorporation," while an "unincorporated organization" must submit "its formation documents, such as bylaws, constitution, articles of association, certificate of formation, or applicable trust agreement, and any related amendments." 34 TEX. ADMIN. CODE § 3.322(e)(2)(A)(i-ii). Other Texas legal sources recognize a similar distinction. *E.g.*, *Cox v. Thee Evergreen Church*, 836 S.W.2d 167, 169 n.3 (Tex. 1992)

11

nothing in this opinion should be understood to suggest that GEO Group, Inc.[12] could qualify as an "unincorporated" instrumentality. Because the parties did not address this "unincorporated" requirement below, however, we do not rest our decision on it.

Instead, we examine the rule in its entirety and apply it to determine whether GEO qualifies as an exempt instrumentality. The rule provides:

> (c) Entities that are always exempt. Certain entities and organizations are exempt under the law and are not required to request and prove exempt status, except to send information as requested by the comptroller to verify its exempt status under this subsection.
>
> > (1) The United States, its unincorporated agencies and instrumentalities. . . . Instrumentalities and agencies of the United States include:
> >
> > > (A) various military entities under the supervision of a base commander;
> > >
> > > (B) organizations that contract with the United States and whose contracts explicitly and unequivocally state that they are agents of the United States;

---

("Unincorporated associations have long been a problem for the law. They are . . . analogous to corporations, and yet not corporations . . . ."); TEX. R. CIV. P. 28 ("Any partnership, unincorporated association, private corporation, *or* individual . . . may sue or be sued . . . ." (emphasis added)).

[12] Determining whether GEO LLC qualifies as "unincorporated" is a similar conundrum: although a limited liability company is not "incorporated" per se under Texas law, it does have the status of a separate juridical person, *see Rieder v. Woods*, 603 S.W.3d 86, 97-98 (Tex. 2020), and we have been pointed to no authority that definitively classifies it as "unincorporated."

(C) organizations wholly owned by the United States or wholly owned by an organization that is itself wholly owned by the United States;

(D) organizations specifically named as agents of the United States or exempted as instrumentalities of the United States by federal statutes; and

(E) organizations having substantially all of the following characteristics:

    (i) they are funded by the United States;

    (ii) they carry out a specific program of the United States;

    (iii) they are managed or controlled by officers of the United States;

    (iv) their officers are appointed by the United States;

    (v) they perform commitments of the United States under an international treaty; and

    (vi) they are not organized for private profit;

(2) any incorporated agency or instrumentality of the United States wholly owned by the United States or by a corporation wholly owned by the United States. . . ;

. . . .

(4) the State of Texas, its unincorporated agencies and instrumentalities; and

(5) any county, city, special district or other political subdivision of the State of Texas . . . .

34 TEX. ADMIN. CODE § 3.322(c). GEO claims exemption under subsections (c)(1) and (4). Although subsection (c)(4) does not define "unincorporated agencies and instrumentalities" of the State of Texas, we agree with the parties that the extensive definition of

13

"unincorporated agencies and instrumentalities" of the United States in subsection (c)(1) is also instructive in determining the meaning of the quoted phrase as applied to the State.

GEO cannot qualify for exemption under the first four parts of the definition because it is not a "military entit[y]," its contracts do not "explicitly and unequivocally state" that it is an agent of the United States or Texas,[13] it is not "wholly owned [directly or indirectly] by" the United States or Texas, and we have found no instance where GEO is "specifically named as [an] agent[]" of the United States or Texas or "exempted as [an] instrumentalit[y] of the United States" or Texas "by . . . statutes." *Id.* § 3.322(c)(1)(A)-(D). GEO also gets no help from the last part of the definition because it lacks "substantially all" of the listed characteristics. *Id.* § 3.322(c)(1)(E). At best, GEO could argue it satisfies two of the six characteristics because it is (partially) funded by the federal and state governments and carries out a specific program of those governments by housing federal and state detainees.

GEO declined to make this argument in its briefing, instead contending that based on a dictionary definition of "instrumentality" and an out-of-state case, our inquiry should simply be whether the entity performs a "quintessential government function."[14] But when "a

---

[13] To the contrary, as discussed further below, several of the contracts GEO entered into with its government clients characterize GEO as an "independent contractor."

[14] *Instrumentality*, BLACK'S LAW DICTIONARY 952 (11th ed. 2019) ("A means or agency through which a function of another entity is accomplished . . . ."); *Hum. Rights Def. Ctr. v. Correct Care Sols., LLC*, 263 A.3d 1260, 1265-66 (Vt. 2021).

14

different, more limited, or precise definition is apparent from the term's use in the context of the statute, we apply that meaning." *Am. Multi-Cinema*, 605 S.W.3d at 41. Moreover, a taxpayer must clearly show its entitlement to an exemption and all doubts are resolved against granting it. *Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 624 S.W.3d 535, 540-41 (Tex. 2021). For these reasons, we decline to substitute GEO's proposed inquiry for the rule's narrower and more elaborate definition.

Other tools of statutory interpretation reinforce the conclusion that GEO does not qualify for tax-exempt status. We do not consider statutory words and phrases in isolation. *Aleman v. Tex. Med. Bd.*, 573 S.W.3d 796, 802 (Tex. 2019). Rather, "we consider the context and framework of the entire statute." *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 451 (Tex. 2020) (internal quotation marks omitted). And when listed phrases or words "are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 195 (2012) (explaining the principle *noscitur a sociis*, a Latin phrase translating to "it is known by its associates").

To determine what commonality exists among the "[e]ntities that are always exempt" listed in subsection (c) of the Comptroller's rule, we are guided by the Tax Code provision that the Comptroller's rule aims to illuminate. Entitled "Governmental Entities," that section of the Code extends a sales and use tax exemption to "any of the following governmental entities," including "an unincorporated instrumentality of

15

the United States." TEX. TAX CODE § 151.309(2). This additional context confirms that the entities the Comptroller's rule intends to cover are those that have either been "explicitly and unequivocally" declared to be a qualifying agency or instrumentality by the government (whether by statute or by contract) or those that could reasonably be viewed as an arm of the government as opposed to merely performing a governmental function. 34 TEX. ADMIN. CODE § 3.322(c).

Having reviewed the record with this construction of the statute and rule in mind, we conclude there is ample evidence supporting the trial court's finding that GEO is not a government instrumentality. Many of the contracts GEO entered into with its government clients include provisions recognizing that "GEO is an independent contractor," that "[n]othing contained in this Agreement shall be deemed or construed to create a . . . principal-agent relationship between the [government] and GEO," and that GEO "shall be responsible for any taxes . . . imposed on the Facility and related property."[15] Like the trial court and the court of appeals, we agree with the contracting parties' characterization of GEO's role.

## CONCLUSION

We hold GEO failed to prove by a preponderance of the evidence that it is an agent or instrumentality of the federal and state governments; thus, GEO is not exempt from Texas' sales and use taxes

---

[15] One such contract declares that GEO "shall be solely responsible for . . . taxes owed or claimed to be owed by [GEO], arising out of [GEO]'s association with the [Texas] Department [of Criminal Justice] pursuant hereto . . . ."

and is not entitled to a refund.  Accordingly, we affirm the court of appeals' judgment.

_____

J. Brett Busby
Justice

**OPINION DELIVERED:** March 14, 2025