ACCEPTED
15-25-00018-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
8/25/2025 4:03 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00018-CV

IN THE COURT OF APPEALS
FOR THE FIFTEENTH JUDICIAL DISTRICT
AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
8/25/2025 4:03:13 PM
CHRISTOPHER A. PRINE
Clerk

PUBLIC UTILITY COMMISSION OF TEXAS,

*Appellant/Cross-Appellee,*

*v.*

CITY OF DENTON, OPERATING AS DENTON MUNICIPAL ELECTRIC,

*Appellee-Cross-Appellant.*

On Appeal from the 459th District Court of Travis County, Texas
The Hon. Maya Guerra Gamble, Presiding Judge, Cause No. D-1-GN-23-008974

# REPLY BRIEF OF APPELLANT
# PUBLIC UTILITY COMMISSION OF TEXAS

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection
Division

August 25, 2025

JORDAN PRATT
Assistant Attorney General
State Bar No. 24140277
Jordan.Pratt@oag.texas.gov

JOHN R. HULME
Special Counsel
State Bar No. 10258400
John.Hulme@oag.texas.gov

Environmental Protection Division
Office of the Attorney General
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
(512) 463-2012 | Fax: (512) 320-0911

ATTORNEYS FOR APPELLANT/
CROSS-APPELLEE PUBLIC UTILITY
COMMISION OF TEXAS

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES..................................................................... iii

GLOSSARY OF ACRONYMS AND TECHNICAL TERMS............................. vi

STATEMENT REGARDING CITATIONS ........................................... vii

INTRODUCTION ....................................................................................1

ARGUMENT ...........................................................................................4

    I.     The Commission correctly set Denton Electric's DSCR at 1.25x...................................................................4

          A.    Denton Electric's requested DSCR of 1.75x was unreasonable..................................................5

          B.    The Commission's conclusion to set Denton Electric's DSCR at 1.25x allows Denton Electric to maintain its credit rating and receive a reasonable rate of return above its operating expenses. ...............................................10

    II.    The Commission properly modified the RFP and applied it to Denton Electric's amended application. .........................14

          A.    The modification to the RFP was not a significant change. ................................................16

          B.    Denton Electric waived the alleged Open Meetings Act violation...........................................20

PRAYER ...............................................................................................24

CERTIFICATE OF COMPLIANCE....................................................27

CERTIFICATE OF SERVICE ............................................................28

# INDEX OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*AEP Tex. Com. & Indus. Retail Ltd. P'ship v. Pub. Util. Comm'n of Tex.*,
   436 S.W.3d 890 (Tex. App.—Austin 2014, no pet.) ............................................4

*BFI Waste Sys. of N. Am., Inc. v. Martinez Env't Grp.*,
   93 S.W.3d 570 (Tex. App.—Austin 2002, pet. denied) ....................................21

*Bluefield Water Works & Improvement Co. v. Pub. Serv. Comm'n of W. Va.*,
   262 U.S. 679 (1923) ...........................................................................................11

*Burke v. Cent. Educ. Agency*,
   725 S.W.2d 393 (Tex. App.—Austin 1987, writ ref'd n.r.e.) ........... 3, 20, 21, 22

*Cent. Power & Light Co. v. Pub. Util. Comm'n of Tex.*,
   36 S.W.3d 547 (Tex. App.—Austin 2000, pet. denied) ................................9, 10

*Cities for Fair Util. Rates v. Pub. Util. Comm'n of Tex.*,
   924 S.W.2d 933 (Tex. 1996) ..............................................................................10

*City of El Paso v. Pub. Util. Comm'n of Tex.*,
   883 S.W.2d 179 (Tex. 1994) ..............................................................................10

*Fox v. City of El Paso*,
   292 S.W.3d 247 (Tex. App.—El Paso 2009, pet. denied) ..................................24

*Nobles v. Emps. Ret. Sys. of Tex.*,
   53 S.W.3d 483 (Tex. App.—Austin 2001, no pet.) ..............................................5

*Pub. Util. Comm'n of Tex. v. GTE-Sw., Inc.*,
   901 S.W.2d 401 (Tex. 1995) ................................................................................1

*R.R. Comm'n of Tex. v. Entex, Inc.*,
   599 S.W.2d 292 (Tex. 1980) ..............................................................................11

*R.R. Comm'n of Tex. v. Hous. Nat. Gas Corp.*,
   289 S.W.2d 559 (Tex. 1956) ..............................................................................11

*Sw. Bell Tel. Co. v. Pub. Util. Comm'n of Tex.*,
    571 S.W.2d 503 (Tex. 1978) ........................................................ 1, 5, 11

*Temple Indep. Sch. Dist. v. English*,
    896 S.W.2d 167 (Tex. 1995) ...........................................................9, 19

*Tex. Turnpike Auth. v. City of Fort Worth*,
    554 S.W.2d 675 (Tex. 1977) .................................................................15

*Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*,
    555 S.W.3d 29 (Tex. 2018).....................................................................17

**Statutes**

Tex. Gov't Code
    § 2001.023.............................................................................................23
    § 2001.024.............................................................................................23
    § 2001.029.............................................................................................23
    § 2001.146(g).........................................................................................21
    § 2001.174(2)...........................................................................................5

Tex. Util. Code
    § 40.004(1)..............................................................................................6

**Rules**

16 Tex. Admin. Code
    § 22.80.............................................................................................. 16, 18
    § 25.192(c)(3) .................................................................................... 1, 5, 6

Tex. R. App. P. 38.3.....................................................................................24

Travis (Tex.) Civ. Dist. Ct. Loc. R. 10.5(e)...............................................24

**Other Authorities**

Pub. Util. Comm'n of Tex., Open Meeting Information and Agenda
    (Oct. 6, 2022), *Texas Secretary of State: Open Meetings*, Docket
    No. 52353, Application of Rayburn Country Electric
    Cooperative, Inc. to Change Wholesale Transmission Service
    Rates                   (Final                    Order),

https://texas-sos.appianportalsgov.com/rules-and-meetings?interface=VIEW_OPEN_MEETINGS_SUMMARY& recordId=249725 (accessed Aug. 7, 2025)..........................................................15

# GLOSSARY OF ACRONYMS AND TECHNICAL TERMS

| Term | Meaning |
| --- | --- |
| City | City of Denton |
| Commission | Public Utility Commission of Texas |
| Denton Electric | Denton Municipal Electric |
| DSCR | Debt Service Coverage Ratio |
| ERCOT | Electric Reliability Council of Texas |
| OPUC | Office of Public Utility Counsel |
| Policy | Debt Management Policy |
| PURA | Public Utility Regulatory Act |
| RFP | Rate-Filing Package |

## STATEMENT REGARDING CITATIONS

In this brief, citations to the Clerk's Record will be in the following form: CR at [Page number]. Citations to the Supplemental Clerk's Record will be in the following form: Suppl. CR at [Page number]. Citations to the Reporter's Record will be in the following form: RR at [Page number]. Citations to the Administrative Record, which was admitted into evidence in the Reporter's Record, will be in the following form: RR, AR [Item number] at [Page number]. All cited page numbers refer to the document's original page numbers when practical. Otherwise, the PDF page number will be cited in the following form: RR, AR [Item number] at PDF [Page number].

# INTRODUCTION

The rate of return that the Public Utility Commission of Texas ("Commission") set for Denton Municipal Electric ("Denton Electric") in this transmission rate case is consistent with the applicable statutes and rules, reasonable, and supported by the record evidence. The district court judgment reversing the Commission's order on this basis should be reversed.

Under the Public Utility Regulatory Act ("PURA"), the Commission has the discretion to set a utility's reasonable rate of return as a question of fact. *Sw. Bell Tel. Co. v. Pub. Util. Comm'n of Tex.*, 571 S.W.2d 503, 515-16 (Tex. 1978). The Texas Supreme Court has recognized that ratemaking is a complex process that "relies substantially upon informed judgment and expertise and utilizes projections and estimates in virtually all areas." *Pub. Util. Comm'n of Tex. v. GTE-Sw., Inc.*, 901 S.W.2d 401, 411 (Tex. 1995). For this reason, the Legislature granted the Commission considerable discretion when weighing the evidence and determining a reasonable rate of return that a utility can recover through its transmission rates. *Id*. at 409-10. Under the Commission's rules, a municipally owned utility can receive a rate of return based on its actual debt service and a reasonable coverage ratio. 16 Tex. Admin. Code § 25.192(c)(3). While municipally owned utilities can request any coverage ratio in their transmission rate application, the Commission will only grant a reasonable coverage ratio that is supported by the evidence.

1

Denton Electric alleges that the Commission's determination was based on an improper modification to the Rate-Filing Package ("RFP") instructions. Appellee Br. 8. But this contention fundamentally misunderstands how a ratemaking proceeding works. The Commission does not set a municipally owned utility's rate of return based on language in the instructions of the RFP. The RFP is neither law nor a Commission rule. It is merely a standardized application form containing the requirements for utilities to follow when submitting a rate application and an explanation of how the Commission will process the rate application. Denton Electric's rate of return is a question of fact that falls squarely within the Commission's discretion under its statutory authority to determine a utility's reasonable rate of return and to ensure that its rates are just and reasonable.

Regardless, the Commission properly modified the RFP during the October 2022 open meeting and applied the modified RFP to Denton Electric's amended application. Denton Electric cites to no authority for its argument that the modification was a significant change requiring publication in the Texas Register before implementation. Commission Rule 22.80 as a whole demonstrates that a change is only significant if it has an effect on the filing requirements in a standard form adopted under the rule. Because the modification to the RFP did not change any filing requirements, it was not a significant change.

Additionally, Denton Electric waived any alleged Open Meetings Act violation by not raising this legal basis in its motion for rehearing. Denton Electric's argument that the motion for rehearing stated that the Commission gave no notice of the modification, and that this statement encompasses an alleged Open Meetings Act violation, has no merit. Appellee Br. 21. It is longstanding precedent that the legal basis for an alleged error cannot be supplied in general terms. *Burke v. Cent. Educ. Agency*, 725 S.W.2d 393, 397 (Tex. App.—Austin 1987, writ ref'd n.r.e.). In any event, the Commission complied with the Open Meetings Act when it modified the RFP during another utility's transmission rate proceeding because the modification was a consequence of applying the RFP to that utility's application when issuing a final order setting its transmission rates.

Denton Electric misreads the Commission's rules and the RFP to insist that it is entitled to a Debt Service Coverage Ratio ("DSCR") of 1.75x. This would be a huge amount and reflect a rate of return nearly double its current debt obligations. This rate of return would completely cover Denton Electric's debt obligations and give it an additional *75%* of those debt obligations as pure profit that it would recover through the rates it charges every ratepayer in the Electric Reliability Council of Texas ("ERCOT") market. Denton Electric based its demand on the City of Denton's ("City") Debt Management Policy ("Policy") issued *after* this proceeding began, RR, AR Item 178 at 3:6-7, a policy that has nothing to do with Denton Electric's

3

current existing debt. In other words, the City Policy does not represent its actual debt obligations. The City Policy is forward-looking and directs municipal utilities to acquire future bonds with a DSCR of 1.50x. RR, AR Item 112 at 11:17-18. But all the bonds that Denton Electric currently holds require a DSCR of 1.25x, which is consistent with the City's prior debt management policy that directed municipal utilities to acquire bonds with this ratio. The record demonstrates that Denton Electric's actual principal and interest payments require a DSCR of 1.25x.

In short, Denton Electric failed to support the reasonableness of its requested 1.75x coverage ratio. The Commission applied its rule and, based on the evidence in the record, concluded that a DSCR of 1.25x provided Denton Electric with a reasonable rate of return. The Commission would have reached this conclusion under both the old and modified RFP. Thus, the district court erred when it held that the Commission's conclusion was arbitrary and capricious because it was based on the modified RFP.

## ARGUMENT

### I. The Commission correctly set Denton Electric's DSCR at 1.25x.

Under the substantial evidence rule, the Court determines whether Denton Electric's substantial rights were prejudiced by the Commission applying the modified RFP to its application. *AEP Tex. Com. & Indus. Retail Ltd. P'ship v. Pub. Util. Comm'n of Tex.*, 436 S.W.3d 890, 914 (Tex. App.—Austin 2014, no pet.)

(citing Tex. Gov't Code § 2001.174(2); *Nobles v. Emps. Ret. Sys. of Tex.*, 53 S.W.3d 483, 489-90 (Tex. App.—Austin 2001, no pet.) (holding that erroneously placing the burden of proof on the insured was harmless error because evidence in the record supported the agency's conclusion)). Denton Electric has shown no such harm to its substantial rights. The record demonstrates that it failed to support the reasonableness of its requested DSCR of 1.75x. The Commission applied its rule, and the modified RFP, to conclude that the 1.25x DSCR stated in Denton Electric's bonds provided it with a reasonable rate of return. However, even if the Commission applied the old RFP, it would have come to the same conclusion. The presumption of reasonableness for an additional 0.25x on top of the ratio stated in Denton Electric's bonds was rebutted by evidence in the record. Denton Electric did not provide any additional evidence to support a ratio above the ratio stated in its bonds. Thus, Denton Electric's substantial rights were not prejudiced because under both the old and the modified RFP, the Commission properly set Denton Electric's DSCR at 1.25x.

A.     **Denton Electric's requested DSCR of 1.75x was unreasonable.**

The Commission has the discretion to set a utility's rate of return as a question of fact. *Sw. Bell Tel. Co.*, 571 S.W.2d at 515-16. Denton Electric chose, under the Commission's rules, to use the debt service coverage method to calculate its rate of return. 16 Tex. Admin. Code § 25.192(c)(3). When utilities select this method, their

rate of return is based on their actual debt service and a reasonable coverage ratio. *Id*. When determining a reasonable coverage ratio, the Commission will consider the ratio in the utility's most recently issued bond indentures or a city ordinance and the most recent rate action of the rate setting authority. *Id*.

Denton Electric argues that the Commission is required to consider its City Policy when determining a reasonable coverage ratio because the City Policy was the most recent rate action of the rate setting authority. Appellee Br. 12. But Denton Electric's novel interpretation of this section of the Commission's rule is contrary to the plain language. First, the City Policy is not a "rate action." It is a *debt management policy* issued by the City that applies to all financing activities of the City, including the debt service of municipal utilities. RR, AR Item 178 at 3:6-8. It has nothing to do with transmission rates. Second, the City is not the rate-setting authority over Denton Electric. The City has *no authority* to set Denton Electric's transmission rates. Tex. Util. Code § 40.004(1). This section of the Commission's rule merely directs the Commission to *consider* the DSCR that the utility received in its previous transmission rate case. Thus, this section of the rule has no relevance to the City Policy.

Municipally owned utilities can request any coverage ratio they deem is appropriate. But the RFP provides instructions that explain how the Commission weighs the evidence when determining a reasonable coverage ratio. First, the

6

Commission will look to the ratio that the utility's bonds themselves require for the utility to meet its debt obligations. RR, AR Item 206 at 15, AR Item 117 at PDF 21. Under the old RFP, an additional 0.25x on top of the ratio provided in the bonds was presumed reasonable. RR, AR Item 117 at PDF 21. If the utility's bonds do not provide a ratio, then the Commission will consider a ratio provided in a city policy or ordinance. RR, AR Item 206 at 15, AR Item 117 at PDF 21. Last, the RFP provides that if the utility requests any other ratio besides these, they must justify and explain the reasonable circumstances supporting it. RR, AR Item 206 at 15, AR Item 117 at PDF 21.

Here, Denton Electric did not ask for the ratio in its bonds. In fact, it did not even ask for the 1.50x ratio provided in its City Policy. It asked for a 1.75x ratio, based on the City Policy and an additional coverage of 0.25x. RR, AR Item 112 at 11:13-15. Once again, Denton Electric ignores the plain and unambiguous language in the old RFP by claiming that the extra 0.25x is mandatory for municipally owned utilities. Appellee Br. 31. But the old RFP clearly stated, "the debt service coverage levels stated in the [transmission service provider]'s most recently issued bond and debt covenants plus additional coverage of 0.25 for municipal utilities and river authorities shall be presumed reasonable." RR, AR Item 117 at PDF 21. Denton Electric had every right to request a DSCR of 1.75x, but, to receive this ratio, it had

to justify it and explain the circumstances that supported a ratio other than that expressly stated in its bonds. Denton Electric did not do this.

The only basis Denton Electric offered for its requested ratio of 1.75x was its City Policy and misinterpreting the old RFP as entitling it to this. Commission staff's expert witness, Mark Filarowicz, testified to the contrary that the facts and conditions of this case, and the documentation submitted by Denton Electric in this proceeding "do not justify a [DSCR] of 1.75x under any circumstance." RR, AR Item 112 at 13:20-21. Mr. Filarowicz explained that Denton Electric's bonds all stated a DSCR of 1.25x. *Id*. at 9:22-10:2. Thus, under the clear instructions in both the old and modified RFP, the Commission did not need to consider the City Policy. *Id*. at 16:5-8. Furthermore, Mr. Filarowicz explained that the information provided by Denton Electric to support its debt service needs, that is, what it needs to cover its principal and interest payments, demonstrated that its current actual DSCR was 1.25x. *Id*. at 17:22-24. Mr. Filarowicz concluded that Denton Electric's application and supporting documentation did not provide any justification for increasing its DSCR above the 1.25x ratio stated in its bonds. *Id*. at 17:19-21. He emphasized that, under the Commission's rules and the RFP, Denton Electric had the burden of proof to support its requested coverage ratio and that Denton Electric's "meager support . . . does not justify the (rather high) requested [DSCR] of 1.75x." *Id*. at 16:9-13.

The *most* that Denton Electric could have received using the presumption in the old RFP was 1.50x—an additional 0.25x on top of the 1.25x ratio stated in its bonds. Denton Electric argues that this was not rebutted by any evidence in the record. Appellee Br. 30. However, expert testimony *is* evidence. *Cent. Power & Light Co. v. Pub. Util. Comm'n of Tex.*, 36 S.W.3d 547, 561 (Tex. App.—Austin 2000, pet. denied) (holding that figures generated by expert witnesses constituted substantial evidence to support the Commission's conclusion). Not only did Mr. Filarowicz find that the evidence in the record did not justify any coverage above the ratio stated in Denton Electric's bonds, but the Office of Public Utility Counsel's ("OPUC") expert witness, Mark Garrett, also provided testimony expressly finding that 1.50x was unreasonable. Mr. Garrett analyzed similarly situated utilities and concluded that the highest reasonable ratio that Denton Electric could possibly receive was 1.42x. RR, AR Item 110 at 8:1-9. He explained that 1.42x was the maximum ratio he could calculate that would be considered reasonable. RR, AR Item 168 at 74:4-6. Thus, anything more than 1.42x was unreasonable.

"A presumption is simply a rule of law requiring the trier of fact to reach a particular conclusion in the absence of evidence to the contrary." *Temple Indep. Sch. Dist. v. English*, 896 S.W.2d 167, 169 (Tex. 1995). Here, there was record evidence that 1.50x was unreasonable. Thus, the presumption in the old RFP that 1.50x was reasonable was rebutted, and Denton was required to come forward with evidence

9

to support any additional coverage above that provided for in its bonds. Denton did not provide any additional evidence to support a coverage ratio above 1.25x.

The Commission is the judge of the weight of the evidence and the credibility of witnesses. *Cent. Power & Light Co.*, 36 S.W.3d at 561. When given a range of reasonable options, the Commission has the discretion to select within that range. *City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179, 186 (Tex. 1994). Based on the evidence in the record, the Commission could select a reasonable coverage ratio from a range of 1.25x and 1.42x. The Commission applied its rule and concluded that the 1.25x ratio required by Denton Electric's bonds provided it with a reasonable rate of return. RR, AR Item 159 at 11. The Commission's conclusion was supported by substantial evidence, and it would have reached this conclusion under both the old and modified RFP.

**B.    The Commission's conclusion to set Denton Electric's DSCR at 1.25x allows Denton Electric to maintain its credit rating and receive a reasonable rate of return above its operating expenses.**

Denton Electric cannot justify the high debt ratio it claims it is entitled to because of the need to cover its operating expenses and maintain its credit rating. "[A] utility is entitled to rates sufficient to repay its expenses, without a return or profit on those expenses, and to provide a return on the invested capital included in its rate base, without repaying that investment." *Cities for Fair Util. Rates v. Pub. Util. Comm'n of Tex.*, 924 S.W.2d 933, 935 (Tex. 1996). Texas courts have followed

the principle that "to avoid confiscation the rate of return must be high enough to attract ample capital but *need not be beyond that*." *Sw. Bell Tel. Co.*, 571 S.W.2d at 515 (emphasis added) (quoting *R.R. Comm'n of Tex. v. Hous. Nat. Gas Corp.*, 289 S.W.2d 559, 572 (Tex. 1956)). The Texas Supreme Court has acknowledged that the basic legal requirements for a rate of return have been set out by the U.S. Supreme Court. *R.R. Comm'n of Tex. v. Entex, Inc.*, 599 S.W.2d 292, 295 (Tex. 1980). In turn, the U.S. Supreme Court has held that a public utility

> has no constitutional right to profits such as are realized or anticipated in highly profitable enterprises or speculative ventures. The return should be reasonably sufficient to assure confidence in the financial soundness of the utility and should be adequate, under efficient and economical management, to maintain and support its credit and enable it to raise the money necessary for the proper discharge of its public duties.

*Bluefield Water Works & Improvement Co. v. Pub. Serv. Comm'n of W. Va.*, 262 U.S. 679, 692-93 (1923).

A DSCR of 1.25x allows Denton Electric to receive a return above its operating expenses. Denton Electric seems to conflate its operating expenses and its rate of return by arguing that a DSCR of 1.25x would not allow it to meet its debt obligations and its cash needs. Appellee Br. 9, 37. However, these are two separate components of Denton Electric's transmission revenue requirement. The Commission's Final Order allows Denton Electric to recover through its transmission rates its full reasonable and necessary operating expenses of

11

$13,548,937. RR, AR Item 159 at 8. Separately, using the DSCR of 1.25x, the Commission calculated Denton's rate of return at 6.21%. *Id*. Applying the rate of return of 6.21% to Denton's transmission rate base resulted in a return on rate base of $11,930,303. *Id*. This number reflects recovery of its full debt obligations and an additional 25% of those debt obligations as an additional return on investment. Thus, Denton's transmission rates allow it to recover its full reasonable and necessary operating expenses and full debt obligations as well as a return on its invested capital above its operating expenses and debt obligations.

The record also demonstrates that a DSCR of 1.25x would allow Denton Electric to maintain its credit. Denton Electric's own witness, Antonio Puente, provided testimony supporting this conclusion. Rating service agencies provide credit ratings on municipally owned utility bonds and issue guidance on how those ratings are calculated. One factor, of many, that rating agencies use when determining a utility's credit rating is the utility's DSCR. *See, e.g.* RR, AR Item 2 at PDF 91-92. Mr. Puente testified that Denton Electric's bonds are currently rated in the "A" category by Fitch Ratings' service. RR, AR Item 207 at 16:3-4. Fitch Ratings' analysis considers Denton Electric's DSCR of 1.25x within the median range for bonds rated in the "A" category. *See* RR, AR Item 2 at PDF 80-81. Mr. Puente acknowledged this fact. RR, AR Item 207 at 16:3-4. Thus, the Commission's conclusion to set its DSCR at 1.25x allows it to maintain a credit rating within the

"A" category. Additionally, Standard & Poor's rating service provides that a coverage ratio of 1.20x – 1.40x is considered "strong." RR, AR Item 2 at PDF 105. Therefore, a DSCR at 1.25x allows Denton Electric to remain within the "strong" coverage category. Furthermore, Fitch Ratings revised Denton Electric's rating outlook from "negative" to "stable" while this transmission rate case was pending before the Commission. RR, AR Item 221 at 1. This revision expressly took into consideration Denton Electric's pending transmission rate application. *Id*. at 7. Thus, the Commission set Denton Electric's DSCR at a ratio that Fitch Ratings considered sufficient when it revised Denton's rating outlook from "negative" to "stable."

Indeed, Denton Electric is effectively arguing for the Commission to provide a return necessary to *upgrade* its credit rating by granting it a greater DSCR than that provided in its bonds. In fact, Mr. Puente admitted as much when he stated that Denton Electric's requested 1.75x coverage ratio would "lead to an improved bond rating." RR, AR Item 207 at 16:22-23. However, the Commission is under no duty to *increase* a utility's credit rating, but only to ensure that the utility maintains its credit. As Mr. Garrett explained, when setting rates, the utility's desire for a high DSCR needs to be weighed against the Commission's duty to ensure that rates are just and reasonable for consumers. RR, AR Item 110 at 7:15-16. The Commission balanced these interests in concluding that a DSCR of 1.25x provides Denton Electric with an opportunity to earn a reasonable return on its invested capital in

excess of its reasonable and necessary operating expenses. RR, AR Item 159 at 10. Therefore, there is no basis for Denton Electric's argument that setting its DSCR at 1.25x, the ratio required by its bonds, and the ratio considered "strong" by Standard & Poor's and within Fitch's median coverage ratio for the "A" category, would financially harm Denton Electric. Appellee Br. 27. Thus, the Commission's conclusion to set Denton Electric's DSCR at 1.25x satisfies the legal requirements by allowing it to maintain its credit and receive a reasonable rate of return above its operating expenses. Consequently, the district court erred by finding the Commission's conclusion to set Denton Electric's DSCR at 1.25x was arbitrary and capricious.

## II. The Commission properly modified the RFP and applied it to Denton Electric's amended application.

Denton Electric waived an alleged Open Meetings Act violation because its motion for rehearing at the Commission did not state this legal basis for challenging the modification to the RFP. However, even if it was not waived, there is no Open Meetings Act issue here. The Commission's directive to its staff to modify the instructions to the RFP during the October 2022 open meeting was not a violation of that statute. The Commission made the instruction to its staff in connection with the Commission's consideration of another non-investor-owned utility's transmission rate application using the RFP that all non-investor-owned utilities are

14

required to use, including Denton Electric.[1] The potential issuance of a final order on that utility's transmission rate application was noticed.[2] A final Commission order sets a utility's transmission rates, and a determination on a utility's rate of return is a fundamental aspect of the Commission's action in setting a utility's transmission rates. The agenda item did not need to specify that the Commission might, in connection with this, direct its staff to modify the instructions to the debt service coverage method in the RFP because the modification was merely a consequence of the Commission's conclusion in setting that utility's rate of return using the debt service coverage method. *See Tex. Turnpike Auth. v. City of Fort Worth*, 554 S.W.2d 675, 676 (Tex. 1977) ("There is no necessity . . . to state all of the consequences which may necessarily flow from the consideration of the subject stated.").

Additionally, the Commission complied with its own rule when it modified the RFP. The Commission adopted the RFP under Commission Rule 22.80. That rule allows the agency to require that applications filed with the Commission be submitted on and comply with standard forms. It may update these standard forms

---

[1] Pub. Util. Comm'n of Tex., Open Meeting Information and Agenda (Oct. 6, 2022), *Texas Secretary of State: Open Meetings*, Docket No. 52353, Application of Rayburn Country Electric Cooperative, Inc. to Change Wholesale Transmission Service Rates (Final Order), https://texas-sos.appianportalsgov.com/rules-and-meetings?interface=VIEW_OPEN_MEETINGS_SUMMARY&recordId=249725 (accessed Aug. 7, 2025).
[2] *Id.*

at any time, and only significant changes need to be published in the Texas Register before their implementation. Here, the modification to the RFP was not a significant change because it merely revised the instructions for the debt service coverage method and did not change any filing requirements.

## A. The modification to the RFP was not a significant change.

Whether or not the modification to the RFP was a significant change would have no impact on the Commission's conclusion to set Denton Electric's DSCR at 1.25x. Although the Commission ultimately applied the modified RFP to Denton Electric's amended application, the Commission would have reached the same conclusion using the old RFP.

In any event, Denton Electric has cited no authority to justify its argument that the modification to the RFP was a "significant change." It simply asserts that the modification removed a presumption and "[o]f course, that was a significant change." Appellee Br. 16. But Denton Electric does not provide any basis for this assertion. While citing to the "significant change" language in Commission Rule 22.80, Denton Electric ignores the rest of the rule, which requires that applications be submitted on standard forms, contain all information designated on the standard form, and substantially comply with the standard form. 16 Tex. Admin. Code § 22.80. When interpreting the rule, the phrase "significant change" cannot be taken out of context from the purpose of the rule or the other provisions in the rule. *See*

16

*Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 39 (Tex. 2018) ("We recognize a fundamental principle of statutory construction that words' meanings cannot be determined in isolation but must be drawn from the context in which they are used."). Furthermore, Denton Electric neglects to mention that under this rule the Commission has complete authority to make *any* change to its standard forms, and the only requirement for "significant changes" is that they be published in the Texas Register before *implementation*, not before the Commission changes the form. Thus, any alleged injury from the modification is that Denton Electric did not receive notice through the Texas Register, not that the Commission removed the presumption.

The RFP is not law, and a utility's rate of return is not established based on the instructions in a standardized application form. Denton Electric says that the modified RFP limits the rate of return that a municipally owned utility can receive. Appellee Br. 26. But the modification does no such thing. Utilities can still request any coverage ratio they deem appropriate. RR, AR Item 206 at 15. The Commission will weigh the evidence and determine whether a utility's request is reasonable. The only difference is that an additional 0.25x on top of the ratio provided in the utility's bonds is not *presumed* reasonable. It was never *deemed* reasonable, and a utility was never entitled to receive the additional coverage. The presumption was rebuttable, and any party to the proceeding could put forward evidence demonstrating that

17

additional coverage was unreasonable. Indeed, that is exactly what occurred in this proceeding. And as the sole judge of the weight of the evidence, the Commission could conclude that the presumption was rebutted based on the facts and data provided by a utility in its application.

Additionally, the RFP is not a Commission rule. Denton Electric acknowledges this. Appellee Br. 35. But inexplicably, having based its entire challenge to the Commission's rate-of-return determination on the presumption afforded by the old RFP, Denton Electric now claims that the RFP is not binding and that it need not comply with its application requirements. *See* Appellee Br. 41. Essentially, Denton Electric argues that the Commission is required to grant it an additional 0.25x coverage ratio based on the *presumption* in the *instructions* of the old RFP, while at the same time arguing that Denton Electric itself is not bound to follow the filing requirements in the RFP. Denton Electric's own confusion over the nature of the RFP demonstrates why the Commission's modification was not a significant change.

As explained, the RFP was adopted under Commission Rule 22.80 as a standard form for all transmission rate applications. Under Rule 22.80, applications must contain all matters designated in the RFP and shall conform substantially to it. 16 Tex. Admin. Code § 22.80. The depreciation study that Denton Electric failed to submit with its application, that it now says the Commission had no authority to

18

require it to submit, Appellee Br. 41, is just such a "matter designated" in the RFP that Denton Electric's application "shall contain." RR, AR Item 206 at 20. It is one of the items that a utility is required to file with its transmission rate application. On the other hand, the debt service coverage presumption in the old RFP is not such a filing requirement for applicants. It simply explains how the Commission weighed the evidence when determining a reasonable coverage ratio. The modification to the instructions removing this presumption was not a significant change because it did not alter any of the requirements that utilities must follow when they submit their applications.

Furthermore, the Commission properly applied the modified RFP to Denton Electric's amended application. Denton Electric has no vested right in any rate of return, other than the rate of return that the Commission grants in a comprehensive transmission rate proceeding. As discussed, Denton Electric has no vested right in the additional 0.25x presumption provided in the old RFP. This was always a *rebuttable* presumption that only applied to utilities that selected the debt service coverage method for their rate of return *and* requested the coverage ratio provided for in its bonds. Such a presumption merely directs the fact finder to reach a particular conclusion in the *absence* of evidence to the contrary. *Temple Indep. Sch. Dist. v. English*, 896 S.W.2d 167, 169 (Tex. 1995). But the fact that Denton Electric had no vested right in the presumption is beside the point because Denton Electric

submitted a comprehensive amended application *after* the Commission modified the RFP, and the RFP in effect at the time the amended application was filed applied to its amended application.

Thus, the modification to the RFP was not a significant change, and the Commission properly applied it to Denton Electric's amended application. The district court erred by finding that the Commission's Final Order was improperly based on the modified RFP.

**B.      Denton Electric waived the alleged Open Meetings Act violation.**

Denton Electric waived the alleged Open Meetings Act violation by not raising it in its motion for rehearing at the Commission. Denton admits that a motion for rehearing must be sufficiently definite to apprise the agency of the error claimed. Appellee Br. 20. However, a general "heads-up," as Denton Electric claims, is not sufficient. *Id*. To the contrary, longstanding precedent holds that the motion for rehearing *cannot* state the factual or legal basis in only general terms. *Burke*, 725 S.W.2d at 397. Because Denton Electric never specifically alleged an Open Meetings Act violation in its motion for rehearing, the district court erred by concluding that the Commission modified the RFP in violation of the Open Meetings Act.

To preserve error for judicial review, the motion for rehearing must state: "(1) the particular finding of fact, conclusion of law, ruling, or other action by the agency

which the complaining party asserts was error; and (2) the legal basis upon which the claim of error rests." *Id.*; Tex. Gov't Code § 2001.146(g). Under the fair-notice standard, the complaining party is required to succinctly set out both elements in its motion for rehearing. *Burke*, 725 S.W.2d at 397. The two elements may not be supplied in general terms, and the agency and reviewing court may not be forced to speculate about what the complaining party intended. *Id.*

Denton Electric's motion for rehearing never mentioned the Open Meetings Act even once, let alone did it cite any specific Open Meetings Act provision that the Commission allegedly violated. Instead, Denton Electric challenged the Commission's modification to the RFP on only two legal grounds: (1) that the Final Order incorrectly found that the modification "did not invoke the publication requirements of Commission Substantive Rule 22.80 because that rule only applies to a 'significant change' to an existing form and that the modification was insignificant" and (2) that the modification to the RFP constituted impermissible ad hoc rulemaking. RR, AR Item 162 at 9, 15. That the RFP was modified in violation of the Open Meetings Act is found nowhere in the motion for rehearing. Thus, Denton Electric did not preserve error on any alleged violation of the Open Meetings Act. *See BFI Waste Sys. of N. Am., Inc. v. Martinez Env't Grp.*, 93 S.W.3d 570, 579 (Tex. App.—Austin 2002, pet. denied) (holding that the errors alleged in the motion

21

for rehearing did not encompass or imply the agency action that the district court found to be in error).

Merely alleging that the Commission provided "no notice" of the modification is not sufficient to preserve error on an alleged Open Meetings Act violation. Appellee Br. 21. Simply asserting the Commission was required to give notice could implicate countless statutory provisions or Commission rules. The Commission is not required to speculate on which notice requirement Denton Electric contends it violated. Stating that "lack of notice . . . was contrary to *all* applicable statutory and regulatory authority" is not sufficient. Appellee. Br. 25. Courts have long held that a motion for rehearing is insufficient to preserve error by broadly stating that a conclusion of law or finding of fact "violate[s] constitutional or statutory provisions." *Burke,* 725 S.W.2d at 397 ("To generalize in this way is to omit; and, to omit is to render doubtful what is intended to be included in such overly broad assignments of error."). But even if such broad assertions were sufficient to preserve error, Denton Electric *never* made such sweeping claims in its motion for rehearing here. Denton Electric's specific legal basis in its motion for rehearing was that notice was required under Commission Rule 22.80, or in the alternative, the Commission was required to go through formal "notice and comment" rulemaking to modify the RFP.

Additionally, simply stating that the modification occurred *at* an open meeting, Appellee Br. 22, is not alleging the Open Meetings Act was violated. Denton Electric's motion for rehearing alleged that the Commission violated Rule 22.80 by not publishing the modification in the Texas Register. RR, AR Item 162 at 11-12. That is not the same as alleging that a potential change had to be noticed to be considered at an open meeting. These are two distinct notice requirements. Thus, the Commission can comply with the Open Meetings Act by modifying the RFP during an open meeting but still violate Commission Rule 22.80 by not publishing the modification before it was implemented, which is precisely what Denton Electric's motion for rehearing alleged by never raising an Open Meetings Act violation.

Furthermore, Denton Electric's claim that the modification constituted impermissible ad hoc rulemaking is not an alleged Open Meetings Act violation. RR, AR Item 162 at 15. Again, these are distinct notice requirements. Formal "notice and comment" rulemaking involves a long process in which the Commission accepts and responds to comments before adopting a new rule or modifying an existing rule. *See* Tex. Gov't Code §§ 2001.023, .024, .029. The allegation that the modification did not meet the exceptions for ad hoc rulemaking, and therefore needed to go through notice and comment rulemaking, in no way encompasses an alleged Open Meetings Act violation.

And even if the Court finds Denton Electric's motion for rehearing sufficient to preserve error on the alleged Open Meetings Act violation, Denton Electric waived the issue by not raising it in its opening brief at the district court. Denton Electric dropped its argument that the modification constituted impermissible ad hoc rulemaking, and its *sole* basis for the alleged error was that the modification "was effected in violation of the Commission's own regulations," citing Rule 22.80. Suppl. CR at 142. The Travis County District Court Local Rules provide that any issue not briefed is waived. Travis (Tex.) Civ. Dist. Ct. Loc. R. 10.5(e). The first time the Open Meetings Act was ever cited in this case was in Denton Electric's reply brief at the district court. There, for the first time, Denton Electric alleged that the Commission modified the RFP in violation of the Open Meetings Act. Suppl. CR at 339-340. However, "[t]he Rules of Appellate Procedure do not allow an appellant to raise an issue in a reply brief which was not included in his original brief." *Fox v. City of El Paso*, 292 S.W.3d 247, 249 (Tex. App.—El Paso 2009, pet. denied) (citing Tex. R. App. P. 38.3). The issue was waived, and the district court erred by concluding that the Commission modified the RFP in violation of the Open Meetings Act.

## PRAYER

Denton Electric has not shown any reversible error in the Commission's Final Order setting its DSCR at 1.25x. Accordingly, the Commission respectfully requests

that the Court reverse the district court's judgment and render judgment affirming

the Commission's Final Order in all respects.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection Division

 /s/ Jordan Pratt
JORDAN PRATT
Assistant Attorney General
State Bar No. 24140277
Jordan.Pratt@oag.texas.gov

JOHN R. HULME
Special Counsel
State Bar No. 10258400
John.Hulme@oag.texas.gov

Environmental Protection Division
Office of the Attorney General
P.O. Box 12548, MC 066
Austin, Texas 78711-2548
Phone: (512) 463-2012
Fax: (512) 320-0911

**Attorneys for Appellant Public Utility Commission of Texas**

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, I certify that this brief contains 6,127 words, as calculated by Microsoft Word, the computer program used to create this document.

/s/ Jordan Pratt
JORDAN PRATT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the following attorneys via the Court's electronic filing case management system and/or electronic mail on August 25, 2025.

Jose E. de la Fuente
jdelafuente@lglawfirm.com
Gabrielle C. Smith
gsmith@lglawfirm.com
Jamie L. Mauldin
jmauldin@lglawfirm.com
Roslyn M. Warner
rwarner@lglawfirm.com
LLOYD GOSSELINK ROCHELLE & TOWNSEND, P.C.
816 Congress Avenue, Suite 1900
Austin, Texas 78701
Telephone: (512) 322-5800
Facsimile: (512) 472-0532

*Attorneys for Appellee*
*City of Denton, operating as Denton Municipal Electric*

Sharbel A. Sfeir
sharbel.sfeir@opuc.texas.gov
Michael Martinez
Michael.martinez@opuc.texas.gov
Justin Swearingen
justin.swearingen@opuc.texas.gov
Chris Ekoh
chris.ekoh@opuc.texas.gov
OFFICE OF PUBLIC UTILITY COUNSEL
1701 N. Congress Avenue, Suite 9-180
P.O. Box 12397
Austin, Texas 78711-2397
Telephone: (512) 936-7500
Facsimile: (512) 936-7525

*Attorneys for Intervenor*
*Office of Public Utility Counsel*

Katherine L. Coleman
kcoleman@omm.com
Michael A. McMillin
mmcmillin@omm.com
John R. Hubbard
jhubbard@omm.com
O'MELVENY & MYERS LLP
303 Colorado St., Suite 2750
Austin, Texas 78701
Telephone: (737) 261-8600

*Attorneys for Intervenor*
*Texas Industrial Energy Consumers*

*/s/ Jordan Pratt*
JORDAN PRATT

28

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

David Laurent on behalf of Jordan Pratt
Bar No. 24140277
david.laurent@oag.texas.gov
Envelope ID: 104817120
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Reply Brief of Appellant Public Utility Commission of Texas
Status as of 8/25/2025 4:10 PM CST

Associated Case Party: Texas Industrial Energy Consumers

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Katherine Coleman | 24059596 | kcoleman@omm.com | 8/25/2025 4:03:13 PM | SENT |
| Michael McMillin | | mmcmillin@omm.com | 8/25/2025 4:03:13 PM | SENT |
| John Hubbard | | jhubbard@omm.com | 8/25/2025 4:03:13 PM | SENT |

Associated Case Party: City of Denton

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jamie Mauldin | 24065694 | jmauldin@lglawfirm.com | 8/25/2025 4:03:13 PM | SENT |
| Gabrielle Smith | 24093172 | gsmith@lglawfirm.com | 8/25/2025 4:03:13 PM | SENT |
| Jose E.de la Fuente | | jdelafuente@lglawfirm.com | 8/25/2025 4:03:13 PM | SENT |
| Amy Hoffee | | amy.hoffee@cityofdenton.com | 8/25/2025 4:03:13 PM | SENT |
| Marcella Lunn | | marcella.lunn@cityofdenton.com | 8/25/2025 4:03:13 PM | SENT |
| Devin Alexander | | devin.alexander@cityofdenton.com | 8/25/2025 4:03:13 PM | SENT |
| Roslyn Warner | | rwarner@lglawfirm.com | 8/25/2025 4:03:13 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David Laurent | | david.laurent@oag.texas.gov | 8/25/2025 4:03:13 PM | SENT |

Associated Case Party: Public Utility Commission of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

David Laurent on behalf of Jordan Pratt
Bar No. 24140277
david.laurent@oag.texas.gov
Envelope ID: 104817120
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Reply Brief of Appellant Public Utility Commission of Texas
Status as of 8/25/2025 4:10 PM CST

Associated Case Party: Public Utility Commission of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| John RHulme | | John.Hulme@oag.texas.gov | 8/25/2025 4:03:13 PM | SENT |
| Jordan Pratt | | Jordan.Pratt@oag.texas.gov | 8/25/2025 4:03:13 PM | SENT |

Associated Case Party: Office of Public Utility Counsel

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Chris Ekoh | | chris.ekoh@opuc.texas.gov | 8/25/2025 4:03:13 PM | SENT |
| Justin Swearingen | | justin.swearingen@opuc.texas.gov | 8/25/2025 4:03:13 PM | SENT |
| Christiana Segura | 24143396 | christiana.segura@opuc.texas.gov | 8/25/2025 4:03:13 PM | SENT |
| Michael Martinez | | michael.martinez@opuc.texas.gov | 8/25/2025 4:03:13 PM | SENT |
| Sharbel Sfeir | | sharbel.sfeir@opuc.texas.gov | 8/25/2025 4:03:13 PM | SENT |